GEORGE ELLICOTT *vs.* JOHN TURNER and GEO. PETERSON, Exc'rs of JOHN PETERSON.

The act of 1825, ch. 117, confines the appellate court to the *point* decided by the court below, but not to the *reason* given for the decision.

A commission upon its face authorised testimony to be taken in a case in which the executors of *"John Turner"* were defendants, when the suit was against the executors of *"John Peterson,"* and there was no proof of the non-existence of a case on the docket against the executors of *"John Turner."* HELD :

That this irregularity was good cause for the rejection of the *testimony* taken under the commission, but if there had been proof that there was no such case on the docket, the court might have treated the words *"John Turner"* as a clerical misprison.

An agreement by a grandfather to pay to the plaintiff, their step-father, what- ever expense the latter might incur for the support and education of two of the former's grandchildren, is not within the fourth section of the statute of frauds, because the death of the children was a contingency which *might* occur before the lapse of a year, and the agreement was therefore one which *might* have been performed within a year.

Such an agreement is not within that clause of the statute relating to "any special promise to answer for the debt, default, or miscarriage of another," it not being a *collateral*, but an *original* undertaking, the service having been performed *solely* on the credit and liability of the grandfather.

While a full and complete performance by *one* of the parties within the year will take the agreement out of the statute, a *part* performance will not have that effect.

The statute does not apply where the contract can, by *any possibility*, be ful- filled or completed in the space of a year, although the parties may have intended its operation should extend through a much longer period.

A contract to serve another for *two* years is within the statute, but one to serve for an indefinite period, subject to be put an end to at any time upon reasonable notice, is not, though it may extend beyond the year.

If a party contracts to work for *two* years for a given sum and quits at the end of six months, the contract is within the statute, but if he contract for an indefinite time, to be paid by the week or month, the statute does not apply.

Where the contract is silent as to the time of payment, and the payment is to be made in consideration of services, such services are a condition precedent to the payment, and must be performed in full before payment can be enforced.

Where the contract has been fully executed and nothing remains to be done but the payment of the money, it is not necessary to declare upon it specifically, but the plaintiff may recover upon the common counts.

Where a contract for work, or the sale and delivery of goods, is within the statute, and the services be rendered, or the goods delivered and accepted, the party may recover upon a *quantum meruit,* and give in evidence the agreement as part of the *res gestæ.*

Where no credit is given to the party who receives the benefit of the services rendered, or money advanced, the agreement to pay by a third party is an *original* undertaking, and for that reason not within the statute.

Where there is a pre-existing obligation, either legal or equitable, to pay, which cannot be enforced, and the party promises, the honesty and rectitude of the thing is a sufficient consideration.

Though a grandfather is not in this State bound to support his grandchildren, yet a contract by him on his own credit for their benefit, is a sufficient consideration to support his promise to pay.

If the services had been rendered *before* the grandfather promised to pay for them, his promise would have been unavailing, because it would have been a mere *nudum pactum.*

A prayer that "if the jury find that the contract between the plaintiff and defendant was executed," &c., is defective in *assuming* the fact of the *existence* of the contract.

APPEAL from the Circuit Court for Anne Arundel county.

This was an action of *assumpsit,* by the appellant against the appellees, executors of John Peterson, to recover money expended by the plaintiff for the support, maintenance, and education of two grandchildren of the testator, Peterson, who were also step-children of the plaintiff, he having married their mother, who was the daughter of said Peterson.   The case was tried before the jury upon issues to the pleas:—1st, of *non assumpsit;* 2nd, limitations; 3rd, set-off; and 4th, that plaintiff did not sue within nine months after dispute and rejection of his claim by defendants, as executors, as required by the act of 1798, ch. 101, sub-ch. 8, sec. 18.   In the course of

the trial two exceptions were taken by defendants, which need not be stated, as they did not appeal. The exceptions by the plaintiff are as follows:

*1st Exception.* The proof in this exception is fully stated in the opinion of this court. The defendants then offered their fifth and sixth prayers, the former of which is also set out in the opinion, and the latter is in substance as follows:

If the jury find that the claim of plaintiff for the board of the boy is founded on an agreement between the parties, that plaintiff was to board and clothe him, and the testator of defendants was to pay plaintiff therefor $125 per annum, and that this agreement was not in writing, and was not to be performed or completed by either party, according to the understanding of the parties thereto, within one year from its date, then the promise of said testator is void and inoperative, and no recovery can be had thereon; and if they further find that said testator afterwards acknowledged that he owed $500 to plaintiff for said board and clothing, and was anxious to pay him, and declared he would pay him as soon as he should sell his crop of tobacco, then this acknowledgment and promise are inoperative and void, if the jury further find that they had reference to the supposed liability of the testator under the agreement between the parties, as above found.

The plaintiff then offered his *first* prayer, that if the jury find that the contract between the plaintiff and defendants' testator was executed by the plaintiff, he is entitled to recover so far as they shall find it was executed by him.

The court, (Brewer, J.,) granted the prayers of the defendants, and rejected that of the plaintiff. To this ruling the plaintiff excepted.

*2nd Exception.* This exception was taken by the plaintiff to the refusal of the court to grant his *second* prayer, to the effect, that if the jury find that the contract on the part of the plaintiff with defendants' testator was performed by him for the first year after such contract was entered into, and that said testator, within three years before the commencement of

this suit, promised to pay for the same, then plaintiff is entitled to recover the amount so agreed to be paid him.

*3rd Exception.* The plaintiff offered to read to the jury the evidence taken under a commission issued to Louisiana. The commission upon its face directed the commissioner to examine witnesses in a cause "depending in Anne Arundel county court, between George Ellicott, plaintiff, and George Peterson and John Turner, executors of *John Turner,* deceased." The interrogatories by plaintiff, and *cross*-interrogatories by defendants, filed with this commission, were entitled as of the present case, viz: "George Elllicott *vs.* George Peterson and John Turner, executors of *John Peterson,* deceased." The evidence taken consisted of the testimony of Ann W. Bryant, formerly Ann W. Iglehart, who was one of the children for the recovery of the expenses of whose board and education this suit was instituted. The defendants objected to the admissibility of this commission, because of irregularities apparent on its face, it appearing in the body thereof to authorise testimony to be taken in a different case from the present, and the court concurring with them in opinion refused to permit the testimony to be read. To this ruling the plaintiff excepted, and the verdict and judgment being for defendant, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Wm. H. G. Dorsey* and *Thos. G. Pratt* for the appellant, insisted:—

1st. That the contract is not within the statute, because it was such an one as *might by possibility* be performed within a year. They cited on this point 43 *Law Lib.*, 248. 13 *Eng. C. L. Rep.*, 332, *Wells vs. Horton.* 52 *Do.*, 806, *Souch vs. Strawbridge.* 10 *Wend.*, 426, *M'Lees vs. Hale.* 10 *Johns. Rep.*, 244, *Moore vs. Fox.* 3 *Hill*, 130, *Lockwood vs. Barnes.* 1 *Verm.*, 72, *Squire vs. Whipple.*

2nd. The contract was *executed* by the plaintiff, and is

therefore not affected by the fourth section of the statute of frauds, and he can recover so far as he has performed it. See on this point *Chitty on Contracts*, 395. 2 *Eng.· C. L. Rep.*, 57, *Hoby vs. Roebuck*. 23 *Do.*, 215, *Donellan vs. Read*. 21 *Do.*, 479, *Gray vs. Hill*. 52 *Do.*, 806, 813, *Souch vs. Strawbridge*. 11 *Do.*, 104, *Mavor vs. Pyne*. 7 *H. & J.*, 124, *Owings and Piet, vs. Low*. 1 *Root*, 233, *Rogers vs. Tracy*. *Do.*, 479, *Cone vs. Tracy*. 2 *Root*, 191, *Pinney vs. Pinney*. *Do.*, 387, *Chittington vs. Fowler*. There was no necessity to set out the special contract in the *nar*—the common counts are sufficient. *Chitty's Pl.*, 348. 2 *H. & G.*, 303, *Causten vs. Burke*. *Evan's Pr.*, 138, 140. 6 *H. & J.*, 84, *Speake vs. Sheppard*.

3rd. The agreement is not within that section of the statute which relates to the promise to pay the debt of another. The plaintiff, the step-father, is not bound to support his step-children. 4 *East*, 77, 79, *Cooper vs. Martin*. 4 *Term Rep.*, 118, *Tubb vs. Harrison*. Statute 43 *Eliz.*, ch. 2. 1 *Strange*, 190, *Rex vs. Munden*. 4 *Wend.*, 404, *Gay vs. Ballou*. He never assumed to do it, except upon the agreement and promise of Peterson, which was therefore an *original* undertaking on his part. The case then is one of an undertaking by Ellicott to do a particular thing at the request of Peterson, and no dictum or decision can be found which would bring such an agreement within the above section of the statute. See 7 *H. & J.*, 392, *Elder vs. Warfield*. 1 *Gill*, 261, *Conolly, et al., vs. Wilson*. 5 *Cranch*, 150, *Violett vs. Patton*. 23 *Eng. C. L. Rep.*, 215, *Donellan vs. Read*. If Peterson was not bound to support his grandchildren, yet having promised to do so, the moral obligation was sufficient consideration for the promise, and it is therefore good. See 1 *Cowper*, 290, cited with approbation in the case of *Stevenson vs. Reigart*, 1 *Gill*, 26. Also 11 *Eng. C. L. Rep.*, 104, *Mavor vs. Pyne*. 67 *Law Lib.*, 74. 7 *H. & J.*, 124, *Owings and Piet, vs. Low*. 10 *G. & J.*, 417, *Jones vs. Hardesty*. 11 *East.*, 154, *Boydell vs. Drummond*. *Chitty on Contracts*, 47.

4th. The court below improperly rejected the testimony

taken under the commission. The error in the name of the parties to the suit was clearly a clerical error, and was so understood by the parties to the proceedings. Indeed the appellees, by filing their cross-interrogatories, have made themselves parties to the error, and have waived it. See 5 *H. & J.*, 438, *Law vs. Scott.*

*Robert J. Brent* for the appellee, argued as to the rejection of the testimony taken under the commission to Louisiana, that the only thing offered by the appellant was the proof taken under this commission, and the only point decided below was the refusal to permit said testimony to be read. Now this exception does not state what the proof was. Each exception is a complete case by itself, and any omission in it cannot be supplied by looking to other facts not incorporated in it. 4 *Md. Rep.*, 273, *Burtles vs. State.* On a question as to the admissibility of evidence, this court are not to try the *reasons* of the court below so much as the *point* decided, (12 *G. & J.*, 380, *Gardner, et al., vs. Simms, et al.,*) and how then can error be assigned in the rejection of testimony which is not stated in the exception? But suppose the court can look to other parts of the record for the proof offered, it will be seen that the only proof was the deposition of Anne W. Bryant, formerly Anne W. Iglehart, one of the children for whose education and maintenance this suit was brought. The witness then was *prima facie* liable in law to the plaintiff for her support, and is suable for necessaries furnished her as soon as she attains age, and her husband would clearly be liable to the suit of the plaintiff by the fact of intermarriage. 4 *Wend.*, 403, *Gay vs. Ballou.* It is clear then that the witness was offered to fasten a liability on the testator, and thereby discharge her and her husband's legal liability for necessaries supplied during her infancy. Her testimony was therefore inadmissible, and there is no error in its rejection, though the court may have rejected it for an improper reason. But again, the parties must be correctly described in the caption to the commission. 17 *Verm.*, 268. If the commission by

61     v.4

mistake describes a different cause, then it appears *on the face* of the return that the witnesses were not authorised to be sworn in the cause.

2nd. As to the statute of frauds: The first question is, whether an agreement which cannot be performed according to its terms by both parties *within the year*, but may be wholly performed *within the year* by the party suing, is within the statute? Looking to the plain language of the fourth section of the statute it clearly results:—1st, that if *the agreement* is not to be *performed in a year* it must be in writing. 2nd, that the statute looks to the *person charged or sued*, and requires the *agreement* to be signed *by him* where it is not to be performed in a year. It is absurd to say the statute does not apply to a parol agreement simply because the party suing has performed, or *might* have performed, his part in the year. This view reverses the plain meaning of the statute, and the recent decisions to that effect are plain departures from the words of the statute and the earlier decisions. In the case of *Peter vs. Compton, Skinner*, 353, it was decided, that "where it appears from the *whole tenor* of the *agreement* that *it is to be performed after the year*, there a *note* is necessary." This case was decided in 1683, before the *revolution*, and the statute was passed in 1667, only sixteen years before. This case is the true judicial construction of the statute, because *cotemporanea expositio est optima et fortissima in lege.* See *Broom's Legal Maxims*, 532. In *Boydell vs. Drummond*, 11 *East*, 154, Lord Ellenborough denies that a *part performance* in the year will take the case out of the statute, and emphatically declares that the statute applies, unless the "*complete performance* or *consummation of the work*" may take place in the year, *according to the "scope and understanding"* of the agreement. See, also *Bracegirdle, vs. Heald*, 1 *Barn. and Ald.*, 726, and 2 *Denio*, 90, *Broadwell vs. Getman.* The true criterion therefore is, whether the *work* to *be done* or *the thing* to be rendered *is* or *may* be *completely* done or *rendered* in *the year*. The *time of payment* is not material and may be postponed for any length of time. Now

in this case the *thing to be done,* according to the hypothesis of our prayers, is the *education and maintenance* of Anne Iglehart during her minority and for a series of years, and of the boy for four years, at $125 per annum.   The agreement as to the boy is clearly within the statute, and such was the decision in *Birch vs. Liverpool,* 9 *Barn. and Cres.,* 393, where a contract for the use of carriages for a term of years, at so much *per annum,* was held to be within the statute.   The cases of *Donellan vs. Read,* 3 *Barn. and Adolph.,* 899, and *Cherry vs. Heming,* 4 *Excheq.,* 631, decide, that where the *whole performance* by the plaintiff *may be done* in the year the statute does not apply.   These cases look exclusively to the plaintiff's part *of the contract,* and not to the defendant's, and as *so deciding* are *questioned* and doubted in 1 *Smith's Lead. Cases,* by *Wallace and Hare,* 373, but we do not understand them as overruling the case in 11 *East,* or deciding anything more than that the mere stipulated postponement of payment by defendant will not bring the case within the statute.   The present case steers clear of all these, because the plaintiff's acts were to continue for more than one year.

But is the case taken out of the statute because the children *might die* in the year, and thus terminate the contract and its *performance, pro tanto,* in *the year?*   We are aware that some judges, in their *solicitude* to repeal the statute, have so decided, but a refinement so *subversive* of the statute is *not law* and does not command even *our respect.*   Other judges have repudiated the idea that the uncertainty of *life* can take a case out of the statute.   See 42 *Eng. C. L. Rep.,* 245, *Sweet vs. Lee.   52 Do.,* 835, *Giraud vs. Richmond.   2 Harrington,* 27, *Harris vs. Porter.   6 B. Monroe,* 17, *Sanders vs. Kastenbine.   2 Sandf.,* 92, *Tolley vs. Greene.*   13 *Wend.,* 307, *Drummond vs. Burrell.   8 Metcalf,* 59, *Lapham vs. Whipple.   5 Wend.,* 204, *Shute vs. Dorr.*   Again, does the execution of the contract by the plaintiff remove the statute which originally applied to the contract when made? Such an idea is advanced in *Souch vs. Strawbridge,* 52 *Eng. C. L. Rep,* 813, but it has no authority for its support and is

not law. The cases of performance all go upon the ground that the defendant has received some benefit from the contract. *Chitty on Cont.*, 446, 693. 1 *Verm.*, 69, *Squire vs. Whipple.* 7 *Cow.*, 263, *Lower vs. Winters.* 3 *Pick.*, 83., *Cabot vs. Haskins.* See, also, 3 *Hill*, 128, *Lockwood vs. Barnes.* 1 *Smith's Lead. Cases*, 377. It is true, where the agreement is ruled out because not in writing, the party may still recover upon a *quantum meruit* if he can make out his case without the parol agreement, but in such a case he must aver in his declaration a previous request and subsequent promise. 1 *Chitty's Pl.*, 294, 295. You cannot imply a contract where you prove an express one. *Chitty on Cont.*, 61, 62. An entire contract cannot be apportioned and a recovery had *pro tanto.* 15 *Pick.*, 166, *Loomis vs. Newhall.* 8 *Johns.*, 253, *Crawford vs. Morrell.* 13 *Wend.*, 53, *Roch vs. Thayer.*

3rd. The subsequent promise to pay by Peterson is void, because it is based on a void contract and is therefore without consideration. There was no legal obligation on the part of the grandfather to support the children. The plaintiff, the step-father, was bound to support them as he received them. 2 *Kent's Com.*, 191. The children would themselves be bound to repay the plaintiff. 4 *Wend.*, 403. See, also, 7 *H. & J.*, 398, *Elder vs. Warfield.* A moral obligation is not sufficient to support a promise where there is no previous legal obligation. 7 *Conn.*, 61, *Cook vs. Bradley.* 2 *G. & J.*, 217, *Pennington vs. Gittings.* *Chitty on Cont.*, 67. A promise to pay under a mistaken opinion of the nature of the contract is wholly void. 10 *G. & J.*, 282, *Vincent vs. Chapman.*

Le Grand, C. J., delivered the opinion of this court.

With a view to simplification, we will first dispose of the last exception of the plaintiff.

The plaintiff offered to read to the jury the *proof* taken under a commission. The defendant objected to the "admissibility of said *commission*," because of irregularities apparent on its face, and the court refused to permit the *testi-*

*mony* to be read to the jury. The commission, on its face, professed to have been issued in a case in which the executors of *John Turner* were defendants. This action is against the executors of *John Peterson.*

We think the court properly rejected the evidence. The act of 1825, ch. 117, confines this court to the consideration of the *point* decided by the court below; it does not to the *reason* given for the decision. If the testimony "be inadmissible on any ground it should be rejected." *Sothoron vs. Weems,* 3 *Gill and Johns.,* 435. *Parker vs. Sedwick,* 4 *Gill,* 318. And therefore, although the defendant only objected to the admissibility of the *commission,* there were good reasons why the court should cover by its decision, the *offer* of the plaintiff, which was, to read the testimony taken under it. If the commission did not belong to the case on trial, any testimony taken under it could not properly be read to the jury. There was no evidence given by the clerk of the court, nor by any one else, of the non-existence on the docket of a case against the executors of *John Turner.* For aught the court could know, there may have been such a case, there being nothing in the law, nor in the ordinary transactions of men, to forbid the same parties from being executors of more than one deceased person. We are, however, of opinion, if it had been shown by proof to the court there was no such case, that there was sufficient in the record to have authorized it to have treated the words *"John Turner"* as a clerical misprison.

This is an action of *indebitatus assumpsit,* and has been brought by the plaintiff, to recover from the defendants a sum of money claimed to be due by their testator, for the support and education of two of his grandchildren, by the plaintiff their step-father.

The plaintiff offered evidence that the defendant's testator had agreed, prior to the marriage of his daughter with the plaintiff, that he would pay to the plaintiff whatever expense he might be put to in the support, maintenance and education of his granddaughter; that in the year 1841, on the day of the marriage of the plaintiff with the daughter of the testator,

the latter took the plaintiff aside and told him that he wished him to take the girl, educate and support her in the best possible manner, and to spare no expense, and it should be repaid to him; that the girl was then about nine years of age. He further proved that he did support, educate, clothe and maintain the said granddaughter, from November 1841, until the death of the testator in 1849. He also proved, that the deceased had frequently in his lifetime stated that he owed the plaintiff a large sum of money for said support, clothing and education of his granddaughter, and a short time before his death promised to pay it so soon as he could sell his crop of tobacco. The plaintiff also proved, that the other grandchild, Richard Iglehart, was taken in 1843, by him, and clothed and boarded for four years, under an agreement made with the grandfather to allow him per year, for the board of his grandson, the sum of one hundred and twenty-five dollars. He proved in addition, that the testator, shortly before his death, stated to the witness, he owed the plaintiff for such board and clothing the sum of five hundred dollars, and sent word to the plaintiff by the witness that he would shortly pay him the amount.

On this state of facts several prayers were presented to the court, of which however, only the fifth and sixth of the defendants, and the first and second of the plaintiff, are before us on this appeal.

The fifth prayer is confined to the claim arising from the education, &c., of Ann W. Iglehart; the sixth relates to the board and clothing of her brother Richard. We think both were improperly granted by the court below.

The first of these two prayers of the defendants, in substance, instructs the jury, if they shall find the claim of the plaintiff is founded on an agreement between the parties, that the plaintiff was to educate and support the girl and to spare no expense, and that he was to be repaid by the testator of the defendants, and shall find that the agreement was not in writing, and was not to be performed or completed by *either* party, according to the understanding of the parties thereto,

within one year from the date of making said agreement, then the promise of the testator of defendants, was not such as to authorize a recovery on it.

We understand the *promise* mentioned in the prayer, to be the one embraced in the original agreement, and were it not for the *subject matter* of the agreement we would hold the prayer to be correct, for we are of opinion there was sufficient in the evidence to justify the jury in inferring, it was the understanding and agreement of the parties, that it was not to be completely performed on either side, within the space of one year; and this circumstance, were it not for the nature of the agreement, would bring it within the express language of the fourth section of the statute of frauds, which is, "that no action shall be brought upon any agreement, that is not to be performed within the space of one year from the making thereof; unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

This clause in the *29th of Charles, 2, ch. 3, sec. 4,* at no great distance of time after its passage, underwent the consideration of all the judges, in the case of *Peter vs. Compton, Skinner,* 353. In that case the action was upon an agreement, in which, the defendant promised for one guinea to give the plaintiff so many at the day of his marriage. The marriage did not happen within the year, and the question was, whether such an agreement was within the statute. It was held by a majority of the judges that it was not, and, that where the agreement is to be performed *upon a contingent,* and it does not appear within the agreement that it is to be performed after the year, there a writing is unnecessary, for the reason, the contingency *might happen within the year.* The case of *Donellan vs. Read, 3 Barn. and Adol.,* 899, went farther, and decided, that where all is to be done by *one* of the parties, is to be done within a year, the statute does not apply. In that case the defendant was tenant to the plaintiff for *twenty years,* and, in consideration that the plaintiff

would make alterations on the demised premises to the amount of fifty pounds, the defendant agreed to pay, during the remainder of his term, an increased annual rent of five pounds. The alterations were made within the year, and the action was brought to recover the additional five pounds as rent agreed upon. In the case of *Peter vs. Compton,* the court seemed to consider a performance on *both* sides necessary, for, in that case, the contract was completely performed by *one* of the parties by the payment of the guinea at the time of the making of the agreement. But while a full and complete performance by *one* of the parties within a year, will take the agreement out of the statute, a *part* performance will not have that effect. *Boydell vs. Drummond,* 11 *East.,* 159.

These principles have been fully recognized by innumerable decisions both in England and this country. And in pursuance of the principles which they sustain, especially that of the case of *Peter vs. Compton,* it has been held both in England and in these States, the statute will not apply where the contract can, *by any possibility,* be fulfilled or completed in the space of a year, *although the parties may have intended its operation should extend through a much longer period.* A contract to serve another for two years, would be within the statute; but a contract to serve for an indefinite period, subject to be put an end to at any time upon reasonable notice, is not within the statute, though it may extend beyond the year. *Souch vs. Strawbridge,* 2 *Manning, Granger and Scott,* 815. *Shute vs. Dorr,* 5 *Wendell,* 204. *Drummond vs. Burrell,* 13 *Wendell,* 307. Where a party contracts by parol to work for the term of *two* years, for which he is to receive a given sum, and quits at the end of six months, the contract is within the statute of frauds, and an action cannot be maintained for its non-performance. *Ibid.* But if the contract be for an indefinite time, and the services under it are to be compensated for in payments by the week or month, the statute does not apply. *Moore vs. Fox,* 10 *Johns.,* 244. In that case the defendant had promised to pay the plaintiff two dol-

lars a year for his services as a minister, and had paid it half yearly for several years. The contract was understood by the court as one to pay half-yearly, and the case was decided on that ground.

Although there is nothing in the evidence of the case now before us, showing *when* the testator of the defendants was to pay the plaintiff for his services and advances, it is but fair to presume, this obligation on the grandfather was not complete on the purchase of every garment, bonnet, or pair of shoes, so as to give the plaintiff a right of action *eo instanti* against him. The reasonable interpretation of the agreement is, that the plaintiff was to bring up the child, clothe, board and educate her, and to be compensated for so doing by the grandfather, not immediately on the accruing of every item of expense, but when the contract was completely performed by the plaintiff, so far as the education of the child was concerned; and this seems to have been the continuing understanding of the parties for no payments were made by the grandparent. But, be this as it may, it is a principle of law that where the contract is silent as to the time of payment, and "the payment is to be made in consideration of the services, those services are a condition precedent to the payment, and must be performed in full, before payment can be enforced." *Drummond vs. Burrel,* 13 *Wendall,* 308.

According to these principles the agreement in this case would undoubtedly fall within the meaning of the fourth section of the statute of frauds, were it not for the subject matter on which it was to operate. It was to educate and board the girl. Her education and support, necessarily, were limited to her *life,* and the duration of that was uncertain; it might or might not extend beyond a year; in other words, her death was a contingency which might occur before the lapse of a year, and this circumstance rendered the agreement one which might have been fulfilled in less time than a year. But, it was argued by the counsel for the appellees, that this resting the validity of the agreement on the possibility of death occurring within the year, was a subtlety and refinement not

authorized by the principles recognized in the early interpretations of the statute. We do not concur in this criticism, but, on the contrary, think the doctrine a legitimate and inevitable consequence from the reasons on which they were based. There can be no difference in principle between a possibility dependent upon the volition of the individual, and one consequent upon a natural event. If by the exercise of the will of a person, the contract can be taken without the statute, we can see no reason why an act of nature should not accomplish the same result, and this view has been taken in several cases. It was sanctioned in the case of *Souch vs. Strawbridge*, 2 *Maning, Granger and Scott*, 808, (52 *Eng. C. L.*, 806,) and in the case of *Onslow Peters vs. The inhabitants of Westborough*, 19 *Pick.*, 364—a case in its facts strikingly analagous this one—the opinion of the court was pronounced upon it. In that case it was agreed between the plaintiff and the father of the child, that the plaintiff should take her into his family and employment, for one month, on trial, and if, at the end of the month, he was not satisfied with her, he might return her to her father, but that, otherwise, he should support her until she was eighteen years of age, and should not return her for any cause but bad conduct on her part; that, in pursuance of this agreement, she went into the family of the plaintiff, and that at the end of the month the plaintiff expressed himself to be satisfied with her, and never offered to return her to her father. The court in review of the decisions, thus, in our judgment, correctly state the law, "From these authorities it appears," say they, "to be settled, that in order to bring a parol agreement within the clause of the statute in question, it must either have been expressly stipulated by the parties, or it must appear to have been so understood by them, that the agreement was not to be performed within a year. And this stipulation or understanding is to be absolute *and certain*, and *not* to depend on any contingency. In the present case, the performance of the plaintiff's agreement with the child's father *depended on the contingency of her life.* If she had continued in the plaintiff's service, and he had

supported her, and she had died within a year after the making of the agreement, it would have been fully performed. And an agreement by parol is not within the statute, when by the happening of *any* contingency it might be performed within a year." So in the case of *Loyon vs. King*, 11 *Metcalf*, 411, an oral agreement not to carry on the business of a livery stable keeper, was held valid, because it must necessarily terminate on the death of the contracting party, which might occur within as well as after the lapse of a year. If the contract can be *accomplished* and *fulfilled* within a year it is not within the statute ; but no contingency can take a contract out of the statute if it be of a nature to defeat instead of fulfilling it.   *Harris vs. Porter*, 2 *Harrington*, 27.

These views dispose of the fifth prayer of the defendants, and also of their sixth.   The latter is erroneous for reasons in addition to those which we have urged to the other.   It is not confined to the promise made at the time the contract was entered into, but extends to the promise to pay which was made by the defendants' testator shortly before his death.

We have shown that the agreement was not within the statute ; but had it been, the sixth prayer of defendants ought not to have been granted for their testator would have been responsible on the common counts, the contract having been executed.   Where the contract has been fully executed, and nothing remains to be done but the payment of the money, it is not necessary to declare upon it specifically   *Ridgeley vs. Crandell and wife*, decided at this term, and the authorities there collected.   *Ante*, 435.   Where there is a contract for the performance of services, or for the sale and delivery of goods which is within the statute, if the services be rendered or the goods delivered and be accepted, the party doing the work or delivering the goods may recover on a *quantum meruit*, and he may give in evidence the agreement under which the labor was performed or the goods delivered as a part of the *res gestæ*.   The law will not allow a man to accept a delivery of goods without making him liable to pay for them.

It must be observed that the original agreement in this case

was not within that clause of the statute of frauds, which relates to "*any special promise to answer for the debt, default, or miscarriage of another.*" It was not a *collateral* but an *original* undertaking, for although the children might have been·responsible, under other circumstances than those which constitute this case, for the support, &c., extended to them by their step-father, yet, that support, &c., was extended, not on their credit, either express or implied, but, *solely* on the credit and liability of the testator of the defendants. Where there is no credit given to the party who receives the benefit of the services rendered or money advanced, the agreement to pay by a third party is an original undertaking, and for that reason not within the statute. *Elder vs. Warfield,* 7 *H. & J.,* 391. And *Kettlewell, et al., vs. Conolly,* 1 *Gill,* 260.

We regard the moral obligation resting on the defendants' testator, as a sufficient consideration to support his promise to pay. To use the language of Lord Mansfield, in the case of *Hawkes and wife vs. Saunders, Cowper,* 289, "where a man is under a legal or equitable obligation to pay, the law implies a promise, though none was ever actually made; *a fortiori,* a legal or equitable duty is a sufficient consideration for an actual promise. Where a man is under a moral obligation, which no court of law or equity can enforce, and *promises,* the honesty and rectitude of the thing is a consideration." This language of Lord Mansfield, however, must be understood as applying only to cases of promise where there was a pre-existing obligation, either legal or equitable, to pay, and not as extending to that class of cases which arise out of the moral affections alone. So it has been held, where a son, who was of *full age* and had ceased to be a member of his father's family, was suddenly taken sick among strangers, and, being poor and in distress, was relieved by the plaintiff, and *afterwards* the father wrote to the plaintiff promising to pay him the expenses incurred, that the father was not responsible on such promise. *Mills vs. Wyman,* 3 *Pickering,* 207. Had the father in that case originally agreed to pay for any assistance which might thereafter be rendered to his son he would have

been liable, and if there had been no credit given to the son, the liability of the father would have been complete without the agreement being in writing. So in the case now before us, although the grandfather was not bound to support his grandchildren, (the statute of 43 Elizabeth, ch. 2, not being in force in this State,) yet he was capable of making a contract on his own credit for their benefit, and such contract would constitute both a good and valuable consideration, for a promise to pay after the thing contracted to be done had been exe- cuted. Had the services been rendered *before* the grandfather promised to pay for them, his promise would have been una- vailing, because it would have been a mere *nude pact*. The facts, however, show that he made the promise to pay before the services were rendered, and that they were performed solely on his credit.

Notwithstanding these views, we think the court properly rejected the prayers of the plaintiff. They were defective in this, they assumed a fact which was to be found by the jury, to wit, the existence of the original contract. See *Gaither vs. Martin*, 3 *Md. Rep.*, 160. *Susquehanna Rail Road Co.*, *vs. Woodruff*, 4 *Md. Rep.*, 252.

*Judgment reversed and procedendo awarded.*