WILLIS P. BARNES and others *v.* W. J. BROWN and wife and others.

When an issue is made up in this Court and sent down to the Superior Court for trial, if on the second trial, in the opinion of the presiding Judge, such issue is too particular and special to meet the merits of the case, he has the power to alter and change the same, so as to embrace all the matters in controversy.

A mortgagor has the right to release his equity of redemption to the mortgagee, though the Courts look with suspicion on such release, and require proof that the same is free from fraud and for a fair and adequate price.   In the case of an assignment of his right of redemption to a stranger, there is no such jealousy, and if the mortgagor would avoid his assignment, he must prove fraud as in other cases.

A mortgagee may purchase the equity of redemption from any person to whom the mortgagor has assigned it, or at an execution sale had at the instance of such stranger.

When a vendee, upon a parol contract to convey lands, which the vendor afterwards refuses to perform, has made payments of the purchase money, or being put into possession has expended money in improvements, he is entitled to be reimbursed.

This was a CIVIL ACTION to compel defendants to convey to plaintiffs the legal title to two lots in Lumberton, originally

tried by *Buxton, J.*, at the Special (January) Term, 1874, of the Superior Court of ROBESON, and from thence brought by appeal to this Court, in which it was argued at June Term, 1873, and sent back to the Court below to have tried certain issues framed here. The cause having been removed to the Superior Court of Columbus, upon the affidavit of the plaintiff, where it was tried before *Russell, J.*, at Spring Term, 1874, upon the issues sent down from this Court.

The facts of the case as sent up with the record, are the same as those set out in the statement of the case in 59 N. C. Rep., 439 ; and the evidence relating to the issues on the last trial, and all the facts pertinent thereto are set out in the opinion of Justice RODMAN.

*N. McLean* and *W. McL. McKay*, for plaintiffs.
*Strange, Leitch, French* and *N. A. McLean*, for defendants.

RODMAN, J.  1. The defendants insist that they are entitled to a new trial of the issues upon which the jury passed at the last trial, because during the trial the Judge altered the issue directed by this Court to be submitted, and submitted others more general, which they had not come prepared to try. The issue which this Court at June Term, 1873, directed to be tried, (69 N. C. Rep., 439,) seemed, upon the case then before us, to embrace all the matters in controversy between the parties which had not been determined by the finding of a jury. As it appeared upon the second trial, it was too special and particular to meet the merit of the case. We think the Judge had the power to change its form, so as to make it more general, or to add other issues more general to meet the merits. Of course it was immaterial whether King had been paid *through the hands of Mr. Barnes.* The material question was; had he been paid ? The defendants have no reason to complain that the Judge required them to try at the term at which the form of the issues was modified. Issues are made *by* the pleadings, or *out of* the pleadings. Those questions only should be put

to a jury which are in issue and which are material, and those, the parties should in general be at all times prepared to try. No form of issue which presents only such questions, can be considered a surprise. The defendants are not entitled to a new trial on that ground.

2. In order to get at the merits of this case, it is necessary to examine the complaint which was filed at Spring Term, 1872. The case there set forth is in substance this: On the 13th December, 1853, Hardy Barnes, the father of plaintiffs, conveyed to King two lots in Lumberton by way of mortgage to secure a debt of $800, which he owed to King. On 27th December, 1853, Barnes conveyed to French, the same lots and another piece of land, in trust to sell and pay certain other debts; French duly sold both the lots and the land, and King purchased the whole at public sale for $1,995, and French conveyed to him accordingly. It is material to inquire what was the nature of King's estate in the two lots, after his purchase of the equity of redemption, which was the only right that French had, or could assign. The learned counsel for the plaintiffs contends that as King was a mortgagee, he could not under *any* circumstances, purchase the equity of redemption, so as to hold the land freed from the mortgagor's right to redeem. The relation of mortgagor and mortgagee he says can only be changed by a foreclosure, or by a payment of the debt. This proposition is evidently too broad, as it excludes any right on the part of the mortgagor to release his right of redemption to the mortgagee, or to assign it to a stranger. These rights he undoubtedly has. It is true, that a Court looks with suspicion, on any release to the mortgagee, upon the idea that he has a certain power over the mortgagor, which he may abuse, and it requires proof that the release was free from fraud, and for an adequate price. But in the case of an assignment to a stranger there is no such jealousy, and if the mortgagor would avoid his assignment, he must prove fraud, as he would in a case of other property. In the present case, the assignment to French is not impeached. If a stranger had purchased of French he

would have acquired the right of redemption; that is to say, an absolute estate in the land on paying off the mortgage debt. In the absence of fraud, and of any valid agreement to the contrary, King must have acquired precisely the same right; that is to say, he acquired an absolute estate in the land, and his mortgage debt was extinguished. He ceased to have any personal claims on Barnes by reason of the mortgage debt. No authority can be found to the contrary of this. In *Camp* v. *Cox*, 1 D. & B., 62, it was held that a mortgagee cannot sell the equity of redemption under execution for the mortgage debt. It was doubted in that case, and also in *Thompson* v. *Parker*, 2 Jones Eq., 475, whether the mortgagee could sell under execution for any other debt to him. If we consider that upon such a sale, the sum bid is the value of the land above the mortgage debt, and that if he becomes the purchaser, his mortgage debt is extinguished, we see no reason for the doubt; but it is unnecessary to express any opinion on the point. But as far as we know, it never has been doubted that a mortgagee may purchase from a person to whom the mortgagor has assigned, or at an execution sale at the instance of a stranger. Of course the effect of such a purchase might be affected by proof of fraud, &c. The counsel refers us to *Boyd* v. *Hawkins*, 2 Dev. Eq., but that case differs so widely from the present as to make comment unnecessary. Here there was no dealing for the equity of redemption by King with the mortgagor, there is no allegation that the sale was injuriously affected by the bidding by King, or that the purchase was at an under value.

The plaintiffs in their complaint, put their case upon an agreement by King to allow Barnes to redeem, or to convey to Barnes on payment by him of the sums which the property cost King, being about $2,800. They allege that such agreement was made orally, or at least they they do not allege that it was in writing, (which as a matter of pleading, they were not bound to do,) and there is no evidence from which a written agreement to the effect of that alleged, can be inferred. They

allege that the sum agreed on was fully paid ; that King conveyed the 350 acres to one of the heirs ; that he repeatedly admitted that he had been paid for the lots; and that his death prevented the conveyance as to them. It is not said that the agreement was before or at the sale, or that the sale was influenced by it at all, and the only evidence to establish the agreement is as consistent with one made after the sale, as with a prior or cotemporary one.

The enquiry then is, supposing such an agreement, not in writing, can it be enforced consistently with the statute of frauds, Rev. Code, chap. 50, sec. 11 ? By this well known act, all contracts to sell lands, &c., are declared void unless the same shall be put in writing and signed by the party to be charged, &c. There are several classes of cases, which might at first seem to come within the words of the act, which it is well settled do not. These exceptions are well known and clearly defined. The general rule requires a writing, and any one who contends that his case is an exception must show that it comes within some excepted class. The excepted class which the plaintiffs' case seems most nearly to resemble is that which is illustrated by the following cases : In *Vannoy* v. *Martin*, 6 Ired. Eq., 169, the defendant had purchased the plaintiff's land at execution sold *for less than its value by means of representations at the sale* that he was buying merely to secure certain debts to himself, on the payment of which the plaintiff might redeem. The plaintiff was permitted to redeem, though there was no writing. In *Neely* v. *Torian*, 1 D. & B., Eq., 410, the sale was under a deed in trust, and the purchaser promised *at the sale* that the plaintiff might redeem, which *had the effect to stifle competition.* Neither the allegation nor the evidence liken the plaintiffs case to these. *Trice* v. *Pratt*, 1 D. & B. Eq., 626, and *Hargrove* v. *King*, 5 Ired Eq., 430, are cases where the defendants purchased the lands as agents of the plaintiffs and with their means or credit, and do not apply here. The plaintiffs' case as set forth, is the naked one of an oral agreement to convey for a certain sum, and the pay-

ment of that sum, which it seems to us is clearly within the statute.

We make no comments on the evidence of the alleged payment, because in the view we take of the case, there may be a new trial as to the fact, and we have no right to prejudice either party before a jury.

We feel obliged to hold that the plaintiffs cannot sustain their demand for judgment that defendants convey to them the two lots.

3. It is settled in this State that when a vendee upon a parol contract to convey lands, which the vendor afterwards refuses to perform, has made payments of the purchase money, or being put in possession, has expended money in improvements, he is entitled to be re-imbursed. *Albea* v. *Griffin*, 2 D. & B. Eq., 9 ; *Winton* v. *Fort*, 5 Jones Eq., 251.

But the complaint in the present case is not framed with a view to any such relief, nether could a recovery of monies paid as above supposed, be had in this action without an amendment. The personal estate of a decedent can only be sued for by his executor, &c., and the executor of Barnes is not a plaintiff. A debt must primarily be recovered from the executor, &c., of the debtor, and the executor of King is not a party to this action.

4. This view of the case renders it unnecessary to consider the inconsistent verdicts rendered by the two juries. For if the second verdict, which finds that Barnes paid about $2,800 on the alleged contract, were otherwise binding, it is defective in that the executor or administrator of King was not a party to the action, and could not contest it.

The judgment below is reversed and the case remanded to the Superior Court of Columbus county, to be proceded in, &c. Neither party will recover costs in this Court.

The Judge below has power to permit the plaintiffs to amend but may require them to pay all the costs of the action.

PER CURIAM.                              Judgment reversed.