Plaintiff sued to recover damages for a breach of contract by which, as he alleges, the defendant agreed that if the plaintiff would give up his business and dispose of his property and move to defendant's farm, where the latter lived, cultivate the same and take care of and support the defendant and wife during their lives, the defendant would presently convey his property to him; that plaintiff accepted the proposal, sold out his property, abandoned his own ordinary work, and went to the defendant's place, where he proceeded to work, and in all other respects to perform his part of the contract, upon faith in the defendant's promise that he would at once convey the property to him. That defendant failed to do what *Page 645 
he had promised to do, and put off the plaintiff from time to time with one excuse and another, and finally refused to convey the property as stipulated. The plaintiff thereupon refused to continue what he had been doing in fulfillment of his part (601) of the agreement, and left the defendant's premises, after he found that it was futile to wait any longer for defendant to act or to expect him to keep his promise. He sues, not to enforce the specific performance of the contract to convey the property of defendant to him, nor for damages because of defendant's breach of the contract in this respect, but solely for the value of the services rendered by him in performing his part of the contract, and for what he laid out in money, or money's worth, at the special request of defendant, while he was attempting to do his part in the transaction, of which defendant received the benefit. The defendant denied the contract, and relied on the statute of frauds, objecting to evidence of the oral contract, and to the charge of the court in regard to it.
The court confined the issues to the contract made between the parties and the amount of the recovery, and refused to submit issues tendered by the plaintiff, and there was no issue involving an enforcement of the contract to convey the land, or damages for its breach. The referee found with the plaintiff, and assessed his damages, or the value of services rendered and money advanced, at $1,787.03, and from the judgment of the court thereon, after overruling defendant's exceptions, defendant appealed.
after stating the case as above: The question on this appeal seems to be easy of solution when it is properly and clearly understood. It is not sought by the plaintiff to enforce specifically the contract of sale, nor to recover damages for a breach of the contract, but the whole basis upon which his claim rests is that by reason of the promise of the defendant to convey his property upon the considerations stated, he was induced to lay out money, and to perform services, for which he seeks compensation. It would appear very strange if, under the law, he is not entitled to this relief, as the justice of his demand is very manifest, and the law, as we think, is strongly with him.
The principle upon which a recovery may be had in a case like this is firmly established by the authorities. The subject is fully treated in 20 Cyc., pp. 298-303, where it is said that where services are rendered on an agreement which is void by the statute, an action *Page 646 
will lie on the implied promise to pay for such services, and the terms of the contract are admissible as evidence of what those services are worth. Where a defendant has successfully resisted the specific performance of a contract, he will not be allowed to set up such contract as binding in order to defeat an action brought to recover (602) money paid in pursuance of said avoided contract. Pendleton v. Dalton, 92 N.C. 185. And so, in Wilkie v.Womble, 90 N.C. 254, and Kelly v. Johnson, 135 N.C. 647, it was held that where a vendor repudiates a parol contract to convey land, the vendee is entitled to recover the amount he had paid under the contract. But this case is absolutely ruled by that of Faircloth v.Kenlaw, 165 N.C. 228. We there said that where the defendant has promised, in consideration of services to be rendered, that he will transfer to the plaintiff certain property, which he afterwards refuses to do, and, instead of fulfilling his contract, sets up the statute of frauds as a bar to any recovery on the same, he acts in bad faith, and his conduct having deceived the plaintiff, who, relying upon the assurance that the contract would faithfully be performed, had been induced to part with his money or to render services of value to the defendant, the later may recover compensation for the loss he has sustained. It is a just and salutory principle of the law that every man is bound to the observance of good faith in his dealings with others, and, at least, to the extent that, as he knows, he is trusted, which may be inferred from the nature of the transactions, and when he induces another to act upon such confidence in him, and betrays it, where the latter has advanced money or performed services, and will sustain damage if the contract is not carried out, the injured party may recover for the loss.
We there said: "Under such circumstances, while it is unquestionably true that no action can be maintained, either to recover damages for the loss of the land or a good bargain, or for a specific performance, yet to hold that the action cannot be sustained to recover for the injury or loss already named would be equivalent to saying that the subject was one in regard to which either fraud or bad faith could not be practiced, or could be, with impunity. Frazer v. Howe, 106 Ill., at p. 563. It is well settled by the authorities that where payments are made or services rendered upon a contract void by the statute of frauds, and the party receiving the services or payments refuses to go on and complete the performance of the contract, the other party may recover back the amount of such payments, or the value of the services, in an action upon an implied assumpsit. A party who refuses to go on with an agreement void by the statute of frauds, after having derived a benefit from a part performance, *Page 647 
must pay for what he has received," citing Galvin v. Prentice, 145 N.Y. 162;King v. Brown, 2 Hill (N. Y.) 485, at 487; Lockwood v. Barnes, 3 Hill (N. Y.) 128.
The same was decided in Williams v. Bemis, 108 Mass. 91, where there was a lease within the statute of frauds, which defendant pleaded. The Court held that the plaintiff could maintain an action for work and labor done, money advanced, materials furnished in cultivating the land, or in performing the contract on his part, notwithstanding the bar of the statute, as he did not (603) seek to enforce the contract specifically or to recover damages for a breach thereof. It was said by the Court: "The true principle is this: The contract being void and incapable of enforcement in a court of law (defendant having refused to perform it), the party paying the money or rendering the services in pursuance thereof may treat it as a nullity, and recover the money or value of the services under the common counts. . . . If it had been a payment in money it would be too plain to be controverted. A payment in labor and service, of which the other has secured the benefit, stands upon the same ground."
The case of In re Estate of Kessler, 87 Wis. 660, is to the same effect, for there the Court held that a parol agreement to devise and bequeath real and personal property as compensation for services rendered by a relative, is within the statute of frauds, as to the real estate, and, the contract being indivisible, the whole agreement fails But in such case the relative may recover for his services what they may appear to have been reasonably worth, and such void agreement may be shown in evidence to rebut the presumption that they were rendered gratuitously. "It is a most important principle, thoroughly established in equity, and applying in every transaction, where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme," quoting from 2 Pomeroy's Equity Jur. (3 Ed.), sec. 921. See, also, Woodbury v. Gardner, 77 Me. 68, and Wood v. Rabe, 96 N.Y. 414, where the same section of Dr. Pomeroy is cited with approval and relied on. It is further said by Dr. Pomeroy, in the same connection: "This most righteous principle lies at the basis of many forms of equitable relief." See, also, King v. Hunt, 1 Pick. (Mass.) 328, 331; Lane v. Shookford, 5 N. H. 130; Gillet v. Maynard, 5 Johns. (N. Y.) 85; Vandersen v. Blum, 18 Pick. 229. The English case of Gray v. Hill Ry. Mood., 420 (op. by Best, C.J.), held that where the defendant, in consideration of certain repairs to be made *Page 648 
by the plaintiff, agreed to assign a lease to him, and after the repairs were made, refused to make the assignment, and set up the statute of frauds as a defense, the law implied a promise to pay for the repairs, and this implied promise was "not touched by the statute." 11 Amer. Reports, at p. 319.
It is stated in Browne on the Statute of Frauds (5 Ed.), sec. 118: "One who has rendered services in execution of a verbal contract which, on account of the statute, cannot be enforced against the other party, can recover the value of the services upon a quantummeruit." Judge Bryan, in Baker v. Lauterbach, 68 Md. 64, at p. 70, expresses the principle with great force and accuracy: (604) "It must be observed that although contracts within the statute of frauds are void unless they are in writing, yet the voluntary performance of them is in no respect unlawful. If services be rendered in pursuance of a contract of this kind by one party, and be accepted by the other, they must be compensated," citing Ellicott v. Peterson, 4 Md. 491.
A rule, based upon the same reason, has often been applied in this Court, where a party has entered into the possession of land and made valuable improvements under a parol contract of the owner to convey the same to him. We have uniformly held that the owner, if he repudiates the contract, must pay for the improvements to the extent that they have enhanced the value of the land. Alhea v. Griffin, 22 N.C. 9; Hedgepeth v.Rose, 95 N.C. 41; Tucker v. Markland, 101 N.C. 422; Vick v. Vick,126 N.C. 123. See, also, Dunn v. Moore, 38 N.C. 364; Winton v. Fort,58 N.C. 251; Sain v. Dulin, 59 N.C. 196; Thomas v. Skyles, 54 N.C. 302;Love v. Neilson, ib., 339; Barnes v. Brown, 71 N.C. 507; Kelly v. Johnson,135 N.C. 647.
Judge Gaston stated the principle strongly and impressively in Albea v.Griffin, supra: "The plaintiff's labor and money have been expended on improving property which the ancestor of the defendants encouraged him to expect should become his own, and by the act of God, or by the caprice of the defendants, this expectation has been frustrated. The consequence is a loss to him and a gain to them. It is against conscience that they should be enriched by gains thus acquired to his injury. If they repudiate the contract, which they have a right to do, they must not take the improved property from the plaintiff without compensation for the additional value which these improvements have conferred upon the property," citing Baker v.Carson, 21 N.C. 381, where Ruffin, C.J., said: "To hold that there is no relief, either in law or in equity, that a man may be stripped of the entire fruits of his toil for years by any one who can cajole him into the weakness of expending them on his land by *Page 649 
assurances for a future title, is a doctrine which seems to be subversive of first principles. . . . This case, on the contrary, is founded on the equity of the plaintiff against the defendant, as the owner of the estate, who takes it away, with its improvements made by the plaintiff. The relief goes upon her unconscientious gains. True the plaintiff sets forth the contract, and asks for its performance. But that is not an alternative in the sense before spoken of. It was necessary for him to do so that he might offer an acceptance on his part, without which he would have no equity; for he would have no right to compensation, if the defendant were willing to let him enjoy the fruit of his labor. He must, therefore, give her the election. Having elected to take the land, the defendant ought to pay the plaintiff, not for the land, nor damages for a breach of the agreement, but for his labor, of which she fraudulently (605) reaps the profits." That states clearly the equitable basis upon which this whole doctrine rests.
There was some criticism of Thomas v. Skyles, supra, and Love v.Neilson, supra, but Judge Battle explains it away in Sain v. Dulin, supra. It arose upon a question of jurisdiction, namely, whether, under the old system, the suit should have been brought at law or in equity (Warren v.Dail, 170 N.C. 406), but this technical distinction is abolished by our present Constitution and reformed procedure, and the principle, which we have applied to this case, is left unimpaired, as it is stated in the authorities cited above.
The unanimity with which the courts of the other States recognize this doctrine, though expressed in varying forms, will appear from the following cases, the substance of each being in effect to adopt the principle as it is stated in Hamilton v. Thirston, 93 Md. 213, 220, that, although the plaintiff is not entitled to maintain an action upon the alleged contract (if the statute is pleaded), he can recover upon a quantum meruit the value of the services rendered by him to his uncle for the latter's benefit, for from services of this kind, even when rendered in pursuance of a contract within the statute by one party and accepted by the other, a right to compensation arises. Murphy v. DeHaan, 116 Iowa 61; Wonsetter v. Lee,40 Kan. 367; Snyder v. Neal, 129 Mich. 692; Spinney v. Hill, 81 Minn. 316;Sims v. McEwen Admr., 27 Ala. 184; Howe v. Day, 58 N.H. 516; Patten v.Hicks, 43 Cal. 509; W. B. Steel Works v. Atkinson, 68 Ill. 421; Miller v.Eldridge, 126 Ind. 461; White v. Weiland, 109 Mass. 291; Moody v. Smith,70 N.Y. 598, and others to be found collected in 20 Cyc., at p. 299, note 52. 2 Reed's Statute of Frauds, sec. 624. The Court said, in Murphy v. DeHaan, supra, at p. 63, that the statute was not enacted for the purpose of aiding one in the *Page 650 
perpetration of a fraud, but to secure him from the consequences thereof. It was intended as a shield, and not as a sword. According to the evidence, defendant had the benefit of plaintiff's services, and he cannot be heard to say that they were performed under a contract which would have been invalid had it remained executory in character. To the same effect isThreadgill v. McLendon, 76 N.C. at p. 26.
In Snyder v. Deal, supra, it was held that where plaintiff rendered services for defendants under an agreement, that she should be compensated therefor at their death, which agreement defendants subsequently repudiated, plaintiff could maintain an action at once for the value of the services. This last case answers the objection that this action was prematurely brought.
As to the questions of evidence. What the defendant said about the contract was, without doubt, competent against him, whether said to plaintiff or to others.
The testimony as to the parol contract was merely explanatory (606) of the transaction, and was not admitted to charge the defendant upon the same, either for its specific enforcement or for damages because of its breach, but merely as tending to show plaintiff's equitable right to recover compensation growing out of it.
The charge of the court is wholly free from any error, and the nonsuit was properly denied, as the evidence was sufficient to support the findings of the referee and the judgment.
No error.
Cited: Mercantile Co. v. Bryant, 186 N.C. 554; Redmon v. Roberts,198 N.C. 164; Hager v. Whitener, 204 N.C. 752; Grantham v. Grantham,205 N.C. 368; Lipe v. Trust Co., 206 N.C. 29; Price v. Gas Co.,207 N.C. 796; Norton v. McLelland, 208 N.C. 138; Price v. Askins,212 N.C. 588; Pickelsimer v. Pickelsimer, 257 N.C. 700.