## ROGERS *vs.* BRIGHTMAN et al.

APPEAL FROM CIRCUIT COURT, BAD AX COUNTY.

Heard July 22, 1859.]            [Decided December 14, 1859.

### *Statute of Frauds—Partnership—Contract.*

In an action commenced by a surviving partner, it is not competent for the defendant to prove by his own oath, what the contract made with the deceased partner ner was. As to the survivor the deceased stands in the relation of a deceased agent.

It is improper for the court to refuse to instruct the jury in relation to a verbal contract, "that if they believed that no time was ever agreed upon between the parties for the completion of a contract, then the statute of frauds did not apply." And this error will not be cured, though the court in its charge do instruct properly in the law, unless it also appear that the refusal did not prejudice the party asking the instruction.

A contract to be within our statute of frauds, must show by its *terms* that it is not to be performed within the year, and it is not enough to show that by mere possibility it might not be.

This action was commenced in Crawford county, and from thence removed to Bad Ax county for trial. It was commenced by Rogers as surviver of Tuttle& Rogers, and averred that Myron Tuttle in his lifetime, and the plaintiff, were possessed of about three thousand pine saw logs in the Kickapoo river, near Brightman's mill, and of the value of $5,000, and that the defendants wrongfully detained the same, &c. The defendants answered, confessing the partnership; that Tuttle in his lifetime had the logs in the Kickapoo river, and of the value of $5,000; but denied the ownership of this plaintiff. They also admitted their possession, but denied the detention, because, during the summer of 1856, Brightman agreed with Tuttle to saw these logs into lumber for him at $5 per 1000 feet; that Tuttle, in September or October, 1856, delivered the logs to Brightman; that the defendants commenced sawing the logs into lumber in pursuance of the contract, and continued to do so with due diligence till April, 1857; that then Tuttle made another agreement with them to saw the remaining logs, 4,300, for $5 per 1000 feet, and to sell the lumber and to account for the proceeds, after deducting the $5 per 1000 feet; that they had partly performed this contract by sawing 1,700 logs, and are still ready to perform the balance thereof; and that there were due them $1,500 upon the contract, and they claimed the right to complete the contract according to its terms; and therefore they demanded possession of the property. To this the plaintiff replied generally.

On the trial the plaintiff proved by himself, that he was the copartner of Tuttle, and owned the half of the logs by virtue of the partnership. He and the administrator of Tuttle had offered to settle with the defendants for what logs they had

sawed, but they refused and claimed to hold the logs and saw them out under the contract with Tuttle. He then offered to sell them the logs, and they refused to buy them. He then sent men after the logs, and the defendants said that they could not have them. He admitted that the defendants were to saw the logs, as he understood, and to sell the lumber at $5 per 1000, but did not understand that any particular price was agreed upon. The logs were all delivered to the mill at one time. He also confessed the genuineness of a large num-ber of orders drawn on the defendants by Tuttle & Rogers for lumber, and also the receipt of 44 cribs of lumber taken by Tuttle & Rogers, and 15 cribs taken by them at Millville. These last contained 48,000 feet. He estimated the logs would make 1,294,000 feet. Other witnesses testified to the same facts; and the plaintiff rested his case.

The defendants then moved the court to non-suit the plain-tiff, which was refused and excepted to.

The defendant Brightman then testified to the partnership of the defendants.

The defendants' counsel then offered to prove the contract between Tuttle, deceased, and Brightman, and the subsequent contract between Tuttle and both the defendants, as the con-tracts are set forth in defendants' answer, by the testimony of the defendant, Brightman. The counsel for the plaintiff ob-jected, and the court sustained the objection, and ruled out the offer of evidence to which the counsel for defendants ex-cepted.

He then testified to the delivery of the logs, and the sawing of a part; and also that they sawed 95,585 feet, which, with culls not measured, amounted to $1,070 06; that they had paid the orders of Tuttle & Rogers, 13,554 feet, and had used 32,-658 feet, and $12 worth of cullings. That they had delivered to Tuttle & Rogers 130 cribs of lumber. He testified that the plaintiff and Tuttle's administrator had requested a settlement, &c., but he had refused because he considered his contract better for himself, which he insisted upon. They had forbid-den the men sent after the logs to take them out of the pond, and that they would resist them by force if necessary.

The counsel for the defendant then offered to prove by Brightman that the late firm of Tuttle & Rogers was indebted an amount for work and labor, and for goods sold and deliv-

ered, and for money laid out and expended for their use besides what they owed them for sawing, upon general account, and insisted that defendants had a right to apply a portion of the money received on sales of lumber, in liquidation of such indebtedness; but the court ruled that such proof was inadmissible and excluded the same from the jury, to which ruling defendants' counsel excepted.

The defendants proved by other witnesses, that Tuttle had said that they were to give $5 per 1000 feet for sawing the logs, and that they were always ready to meet all demands for lumber at call, since they had began to saw. The contract was verbal. And under the customary manner of sawing, it would have taken the greater part of two years to saw the logs.

The counsel for the defendants requested the court to instruct the jury as follows: " If the jury find that the logs in controversy were held by the defendants under a valid contract to saw the whole of said logs, and that the defendants have entered upon a part performance thereof, that then and in that case, the defendants are entitled to recover of the plaintiff the damages they have sustained by reason of the taking of the logs from the defendants, and that the proper measure of damages, is the actual loss by them proved to have been sustained by the reason of the taking of the property, and seven per cent. interest upon the amount of capital thrown out of employment by the taking of the logs." The court refused this instruction, and the defendants' counsel excepted to such refusal.

The defendants' counsel further requested the court to instruct the jury " that this contract in order to be void under the statute of frauds, must have contained some provision which amounted to a *prohibition* of the completion of the contract within one year, and that the mere understanding that the contract might occupy more than one year in its performance, does not bring it within the statute. For instance, when a party undertakes to build and finish a house, the whole to be done before the close of fifteen months, or five years, if you please, from the date of the contract, such contract is not within the statute because the party is at liberty to complete the undertaking in one year if he chooses." The court refused this instruction, and the defendants' counsel excepted to such refusal.

The defendants' counsel further requested the court to in-

struct the jury " that if they believed that no time was ever agreed upon between the parties for the completion of this contract, then the statute of frauds does not apply, and the contract is valid." The court refused this instruction, and the defendants' counsel excepted to such refusal.

The defendant's counsel further requested the court to instruct the jury as follows: " If the jury find that the defendants were at liberty to pay themselves from the sales of lumber as fast as they sawed or could sell the lumber, then the contract is not bad but valid under the statute of frauds." The court refused this instruction, and the defendants' counsel excepted to such refusal.

The court charged the jury that " if it appeared to have been the intention of the parties to the contract claimed by the defendants at the time of the negotiations about sawing the logs to reduce the same to writing at some future time, such contract was not *completed* until it was reduced to writing." To which ruling and opinion the defendants' counsel excepted.

The court further charged the jury as follows: " If the jury find that the defendants were to have their pay out of the proceeds of the lumber sawed, they can have no lien upon the logs not sawed." To which ruling and opinion the defendants' counsel excepted.

The court further charged the jury that under the answer of the defendants they (the defendants), can have no lien upon the *logs not sawed* for their services. To which ruling and opinion the defendants' counsel excepted.

The court further instructed and charged the jury as follows: " The defendants set up the contract for sawing the logs in their answer as follows: ' These defendants further answering say, that some time in April, in the year 1857, the said Myron Tuttle agreed with these defendants, who were then co-partners, to saw the balance of said logs then remaining, being about 4,300 logs, for $5 per 1,000 feet, these defendants to be at the expense of butting the logs and attending the lumber yard—to sell the lumber and 'to account to the said Tuttle for the proceeds thereof, after deducting the said five dollars per 1,000 feet for sawing the same as aforesaid.' I understand that this contract requires that the defendants must do more than saw the logs before they are entitled to the five dollars per 1,000 feet. They must open a lumber yard, sell the lumber, also butt off the logs. The defendants

cannot saw the logs, and then demand the cash for the sawing. They must sell the lumber and deduct the five dollars per 1,000 feet out of the proceeds of the sale. The defendants must also account for the proceeds of the sale from time to to time, on a reasonable demand after the sale of the lumber sold. If they refuse to so account, the plaintiff may refuse to have the balance of the logs sawed, and demand and take them away, as he is not obliged to wait until the defendants have converted the whole to their own use. The alleged contract does not, in its terms, say at what time the logs were to be sawed, but I instruct you that, in that case, the law required them to be sawed in a reasonable time under all the circumstances. If the defendants have not sawed them within a reasonable time after their delivery, the plaintiff might demand and take away the balance of the logs not then sawed. He is not obliged to wait five years to have them sawed and lose the chance of an early sale of the lumber. To which opinion and ruling the defendants' counsel excepted.

The court further instructed and charged the jury as follows: "The defendants claim that there is a balance due them for sawing, and that they have a lien on the logs unsawed for that balance. If there is a balance not paid by reason of the non-sale of lumber sawed, I instruct you that the defendants have a lien upon the unsold lumber, but not upon the logs not sawed." To which opinion and ruling of the court the defendants' counsel excepted.

The bill of exceptions further contains the following rulings which were by the court given in charge to the jury and not excepted to by defendants' counsel: "That if the agreement for sawing the logs was merely for the rate of compensation by the thousand feet, and not for the entire quantity, the plaintiff could terminate the same at any time. That the defendants have no lien upon the logs claimed for damages for the breach of any contract. That if it was the understanding of the parties that the defendants should keep the account of sawing and sales, it imposed upon them the obligation to exhibit their accounts whenever called upon, and their refusal was a breach of the contract, and justified the plaintiff in rescinding and requiring a return of the property remaining on hand. If the jury find that the defendants held the logs under a valid contract to saw the whole quantity of logs, that then and in that case they should find for the defendants. If the jury find that these logs were all of

them delivered at one time and place, to be sawed at a specified price per thousand feet, and that the defendants always acted as if they expected to saw the whole lot, these circumstances may be considered by the jury in determining whether the agreement for sawing the logs was an entire contract or not. That this contract is not bad under the statute of frauds for not being in writing, unless by its express terms it was not to be performed within one year. That if the jury find that the defendants, up to the time of the commencement of this action, fulfilled their part of the contract of sawing as fast as the plaintiff desired or requested them to saw, then the plaintiff was not at liberty to rescind the contract without the consent of the defendants and it is still in force. If the defendant have accounted fairly for the sales of lumber made by them, it makes no difference what amount of lumber remains unsold, nobody is here called upon to account for such unsold lumber."

The verdict was for the plaintiff, and found the title to the property to be in him, that the defendants wrongfully detained the same, and assessed the plaintiffs's damages for the detention thereof at ten cents; and judgment was accordingly then and there entered for the plaintiff and against the defendants for the return of said property to the plaintiff, and for said damages and costs of suit; from which judgment the appellants appeal to this court.

*W. H. Tucker*, and *Johnson & Bullock*, for appellants.

1. The court erred in overruling the motion made by the defendant for a nonsuit. Revised Statutes, 733.

2. The court erred in ruling and deciding that the witness Brightman could not testify to the contract made between Tuttle and the defendant. Rev. Stat., 808, §§ 50 and 51.

3. The court erred in ruling out the testimony offered to show the indebtedness of Tuttle & Rogers to the defendants. The defendants had a right to pay themselves any indebtedness due from Tuttle & Rogers out of the proceeds arising from the sale of lumber, &c. 19 Conn., 190; 5 Denio, 470; 5 Gilman, 449; 11 Met., 174; 3 Denio, 284; 7 How., 681.

4. The court erred in refusing to give the first special instruction asked for by the defendants. That instruction contained a correct statement of the rule of damages on the case. Sedgwick on Measure of Damages, 215–228, also, 28, 29 and 30; 7 Pickering, 181; 7 Wend., 123; 10 Mas., 459.

5.   The court erred in refusing to give the 2d, 3d and 4th special instruction asked for by the defendants.   The contract was clearly not within the statute of frauds.   8 B. Monroe, 422; 2 Sand. Ch., 91; 3 Strobh, 196; 1 Kelley, 148; 3 Hill, 128; 5 Hill, 200; 10 John., 244; 15 Wend., 336.

  6.   The court erred in that part of its charge excepted to.

*Hutchinson & Merrill*, for respondent.


*By the Court*, PAINE, J.   This action was brought by the plaintiff as surviving partner of the firm of Tuttle & Rogers, to recover possession of a quantity of logs.   The defense set up was that the defendants had possession of the logs under a contract made with Tuttle, the deceased partner, by which he delivered to them about five thousand logs at at their mill, which they were to manufacture into lumber, sell and pay themselves out of the proceeds, at the rate of $5 per 1000 feet, for sawing.

  The parties were both sworn, and when one of the defendants was examined, his counsel sought to prove by him the contract as actually made with Tuttle.   This was objected to, and the evidence rejected, on the ground that under sec. 51, chap. 137, R. S., 1858, which allows parties to be witnesses, they are yet not allowed to testify as to any *transaction conducted by an agent of the opposite party*, unless the agent is still living.   This ruling was excepted to, but we think it correct.   Each partner is to all intents and purposes an agent of the firm, and of the other partners, as to matters within the scope of the partnership business.   And where a contract is made by one partner for the firm, we think, after his decease, a contest between the survivor and the other parties in relation to it, is a case not only within the spirit but within the letter of this provision of the statute.   Its object was to allow the parties to testify to such matters, as to which they stood upon an equality, in each being able to produce the testimony

of the person actually conducting the business, but to exclude them where this equality had ceased to exist.

A number of other exceptions were taken which we do not deem it necessary to notice, as we think the judgment must be reversed for the following reasons : It appears from the case that the principal contest both as to law and fact, in the court below, was, whether the contract set up by the defendants was within the statute of frauds or not. And we have found some difficulty in disposing of the exceptions upon this point, in view of the partially conflicting ruling of the court below in regard to it. The second instruction asked by the defendant's counsel was refused. The only doubt we have as to the correctness of this instruction is upon that clause which says that in order to be within the statute, the contract must contain some provision which "amounts to a prohibition" of its completion within the year. If the instruction had said it must contain a "prohibition, it would have been properly refused, because that would imply an actual prohibition in terms. And this is not necessary; as if it appears by the terms of the contract that it cannot in the nature of things be performed within the year, it is within the statute, though it contains no express prohibition. But there may be room for doubt whether the provisions of such a contract would not "amount to a prohibition, or be equivalent to one so far as their effect was concerned. But, conceding that for this inaccuracy the instruction was properly refused, we think the next should have been given.

In this the court was asked to instruct the jury "that if they believed that no time was ever agreed upon between the parties for the completion of this contract, then the statute of frauds did not apply." This the court refused, but in its general charge stated the law correctly to the jury, and told them the contract was not bad under the statute for not being in writing, unless by its express terms it was not to be performed

within one year. We regard this, therefore, as a case where the court refused a proper instruction upon the point, and yet stated the law correctly in its general charge. Should the judgment be reversed for that reason ? We think it should; unless it clearly appears that the refusal did not, or could not prejudice the rights of the party. And upon looking into the evidence to see whether that appears, we think it does not ; but that, on the contrary, it appears that the defendants must have been prejudiced by it; and that the jury must have found that the contract was within the statute and void. We think this must have been so, for the reason that there was no material conflict in the evidence, as to the actual making of the verbal contract. A number of witnesses testify to admissions by Tuttle in his lifetime that he had made a contract with the defendants to saw the logs he had delivered to them. All the evidence in the case goes to show that they were delivered under some contract in regard to their sawing. And the plaintiff himself in his testimony, folio 16 of the printed case, admits that he had understood the contract to be substantially as set up by the defendants, except that he did not understand that any particular amount of sawing was agreed on. But he admits that all the logs delivered to defendants were delivered at one time; and we see nothing in the evidence tending to raise any question, but that whatever contract was made, related to all the logs delivered. And if this was so, the defendants were rightly in possession for the purpose of performing their contract, unless it was void within the statute.

And assuming it to be as stated by all the witnesses who testified in regard to it, and as admitted by the plaintiff, that he understood it, we think it was not. It is true, that the evidence of the defendants themselves showed that the logs could not all have been sawed by their mill, within one year from the time the contract was made. And it is also probable

Rogers vs. Brightman et al.

that the parties contemplated that they would be sawed at that mill. But this is not the question presented by the statute. That is, whether, by the *terms* of the contract, it is not to be performed in the year. The only contract shown here, or which any of the evidence tends to show, is, that the defendants were to saw the logs, sell the lumber, and pay themselves out of the proceeds. Now, we think, in order to make a contract void within this clause of the statute, it must be such that when its terms are known to the court, it can say from them, that it could not be performed within the year. And if this cannot be done, but it appears that everything provided for by the contract, may, in the nature of things and without any violation of its provisions, be done within the year, it cannot then be avoided by an outside inquiry to show that by the means and course of performance which the parties contemplated using, it would necessarily occupy a longer time. The authorities even go further than this, and hold, in many cases, that even where it appears from the terms of the contract that the parties clearly intended it to continue longer than a year, yet if by any possibility, as by the death of one of the parties, it may be completed within the year, it is not within the statute. Thus an agreement to educate a child, *Ellicott vs. Turner*, 4 Maryland, 476, and an agreement to support a child eleven years old till she is eighteen, 19 Pick, 365, have been held not within the statute, because the child might die within the year, and thus put an end to the agreement. And yet it is clear from the terms, that the parties contemplated that the contracts were not to be performed within the year. And in the last case, it might admit of question whether, if the child had died within the year, it could be strictly said to have been a performance of an agreement to support her for seven years, or whether it would not rather have been a case where the performance became impossible by the act of God; and so the party was released. But be that as it

may, these and many other cases that might be cited, go to show that the evident intent and contemplation of the parties, that the contract would not be completed in the year, do not bring it necessarily within the statute, if it possibly may be, without any violation of the ordinary course of nature.

The cases have undoubtedly gone a great ways in relieving parties from the operation of the statute. The course of decision upon this act presents the most striking example of the liberties courts have taken with positive statutes, which exists. But great excuse may be found in the inherent difficulty of establishing any exact interpretation which shall be applicable in all cases, and in the temptation to hold it inapplicable upon slight grounds, growing out of the hardship in many instances, of applying it.

There is a difference in one or two particulars between our statute and the English statute of frauds. Ours makes the agreement void; that simply provided that no action should be maintained on it. That includes agreements " not to be" performed within a year; ours, agreements that " *by the terms*," are not to be performed within a year. And we think it a sound construction to say, that in order to bring a case within this clause of our statute, the court must be able to see from its terms, that the performance is not to be completed within the year, or what is the same thing, that it cannot, in the nature of things, be done. We think this rule in harmony with the statute, and that it is much more certain in its application than that of pursuing the inquiry into the probable means and modes of performance contemplated by the parties, and then into the possibility or impossibility, according to those means and modes, of completing the contract within the year. The later rule must, in many cases, open inquiries of so vague and uncertain a character, as to make it impossible to arrive at any accurate result. Suppose a contract

with an artizan to manufacture a quantity of articles person-
ally, which, by his own labor at the ordinary mode of work-
ing, he could not finish in a year, but by extraordinary indus-
try he could, would it be within or without the statute?
Would the party not be at liberty to be unusually industri-
ous if he chose? And if by being so he could complete
his contract, should he be deprived of it, because at the
ordinary rate he would have worked more than a year? It
would seem not. And yet, an inquiry into the various de-
grees of diligence that might be used, and the possibilities
resulting therefrom, would seem too uncertain as a practical
criterion of the legality of a contract. Or, suppose a contract ·
with a man to manufacture a quantity of articles which, with
the workmen he then has, he cannot possibly finish in the
year, but might by employing others, but nothing is said in the
contract upon this point; shall there then be an inquiry whether
the parties contemplated that only those then employed should
work, or that others should be employed, and the contract be
held good or bad accordingly? This would seem too uncer-
tain for practical purposes.

Applying therefore the rule above stated to this case, there
was nothing in the terms of this contract, which showed that
it was not to be performed in the year, nothing in its nature
that showed that it could not be. It might have been impos-
sible for the defendants to complete it with the means they
then had of working, but they might have built other mills,
they might have employed other mill owners to do it for them.
We think therefore the refusal to give the instruction before
mentioned, was erroneous, and that the judgment must be re-
versed for that reason.

According to many authorities, another ground might have
been claimed by the defendants for holding the case not with-
in the statute, though none of the exceptions raise the ques-
tion. That is, that it appears here, that the contract was to

be, and was fully executed on the part of the plaintiff and his partner within the year. They delivered the logs to the defendants, and had nothing to do to perform it on their part, inasmuch as the defendants were to sell the lumber and pay themselves. This has been held to take the case out of the statute. The authorities upon the point are collected in Brown on Statute of Frauds, p. 287, *et seq.*

In *Donnellan vs. Read*, 3 Barn. & Ad., 899, which is the leading case on the subject, the court say: " As to the contract not being to be performed within the year, we think that as the contract was entirely executed on one side within the year, and as it was the intention of the parties founded on a reasonable expectation that it should be so, the statute of frauds does not extend to such a case." The doctrine does not seem to be fully settled in England, though it has been frequently approved; and it has been approved and sustained by a number of decisions in this country, and some quite recent ones. See authorities cited in Brown on Statute of Frauds, p. 290, note 4; and in addition, see *Blanding vs. Sargeant*, 33 N. H., 239, *Compton vs. Martin*, 5 Rich., 14. It was, however, questioned with considerable show of reason, in *Broadwell vs. Gilman*, 2 Den., 87.

There would seem to be strong reasons for holding to this rule, if it can be done upon a fair construction of the statute. For, notwithstanding the statute, men frequently trust their most important matters to verbal agreements, and where they have been so far acted on as to be entirely executed on one side, it must often cause great hardship to overturn the understanding upon which they have proceeded, and leave them afloat upon such implications as the law may furnish. On the other hand, where it is conceded that by the very terms of the agreement, it cannot be fully performed within the year by both parties, it seems to be taking considerable liberty with the language of the statute, to say that the case is not within

it. But as this point was not raised by any exception, we shall not decide it.

There are also cases which hold that even where the case is within the statute, yet a party who has performed or in part performed it, cannot proceed by action to recover what he has paid or delivered, so long as the other party is willing to abide by it. *Abbott vs. Draper*, 4 Den., 51; *Westfall vs. Parsons*, 16 Barb., 649. The doctrine of these cases seems directly applicable here, because even if the case was within the statute, the plaintiff and his partner voluntarily completed the agreement on their part, and then, while the defendants were willing to perform and insisted on their right to perform, brought this action to recover possession of the logs they had delivered. But as this question was not presented to the court below, the case could not be decided upon that ground.

The instruction asked by the defendants as to the rule of damages, was clearly improper. They would have been entitled to the profits they might have derived from sawing the logs replevied, according to the contract.

But for the reasons before stated, the judgment is reversed with costs, and a new trial awarded.