DEGNAN VS NOWLIN.

Opinion delivered October 19, 1904.

1.  *Contract—Partnership Assigned to One Partner—Action Thereon Parties.*

    Where one partner seeks to recover upon a contract between himself and another as partners, and the defendant, and it appears that his partner abandoned the contract and plaintiff continued it alone, with defendant's consent such other partner is not a necessary party to the suit.

2.  *Contract—Performance of Prevented by Acts of Other—Action for Compensation for Work Done.*

    Where plaintiff was prevented from completing a contract for opening and developing a coal mine of defendant by the latter's failure to

furnish supplies according to the contract, and the defendant takes possession of the mine and benefits by the work of the plaintiff, he is liable to the plaintiff for compensation for such work.

3. *Contracts—Parol—Statute of Frauds—Construction.*

A parol contract for opening up a coal mine which might have been performed within one year does not come within the statute of frauds. Such contracts to be void, under the statute must by a fair construction of their terms negative the right to complete performance within one year.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by George A. Nowlin against James Degnan. Judgment for plaintiff. Defendant appeals. Affirmed.

On the 2d day of October, 1902, appellee (plaintiff below) filed his complaint at law against appellant (defendant below). On the 7th day of January, 1903, appellant filed his general demurrer to the complaint, which was overruled, and on the 6th day of June, 1903, appellant filed a special demurrer, which was sustained by the court. Thereafter, on the 20th day of June, 1903, appellee filed his amended complaint, and alleged that during the month of March, 1902, the plaintiff and defendant entered into a verbal contract, the terms of which were as follows: "The defendant employed the plaintiff to sink a slope, construct air courses, set up machinery, and mine coal on the lease of the defendant in the town of Wilburton, Indian Territory. The defendant was to furnish the plaintiff with a good boiler and engine, specifying the boiler and engine that he was to furnish, and was to furnish all fittings, connections, and equipment to put said machinery in condition to run and operate at

said mine, and was to furnish plaintiff with a machinist to plumb and set up said machinery, and was to furnish all materials necessary in sinking, timbering, constructing tipple, and other attachments necessary to put in readiness for operation of said slope. Defendant was to furnish the plaintiff and his laborers with money and supplies while plaintiff was sinking said slope and doing the dead work in said mine, was to pay off the men of plaintiff on regular pay days, and was to furnish them with supplies and provisions from his store during the month until the plaintiff had turned entries and a sufficient number of rooms, and until the cheap coal mined from the rooms, would overcome the expense of the dead work in said mine, and was to receive all coal mined by the plaintiff at the rate of 90 cents per ton, mine run, and was to give plaintiff credit on his account with defendant for supplies furnished plaintiff and his men, and was to extend credit to plaintiff and his men until plaintiff had been able to obtain the cheap coal from said rooms and repay defendant with the coal so mined and delivered to defendant, and then plaintiff was to be permitted to continue the operation of said mine after the operation of the same had become profitable. The plaintiff was to erect a tipple, sink and timber the slope and air courses, drive and timber entries, and turn rooms. Defendant was to furnish all timbers. Plaintiff was to construct a pond for water to supply said machinery." Plaintiff alleges that under said contract he and his employes worked from the 17th day of March, 1902, until the 16th day of August, 1902, at which time defendant refused to make further advances of supplies or money to plaintiff, and that, by reason of such failure, plaintiff was forced to stop work; that defendant failed to furnish the engines agreed upon, and, instead, furnished an old, small, and wornout engine; that under said contract he sank said slope 25 yards, and constructed 40 yards of air course, constructed a tipple at the mine, furnished materials for same, hauled materials for said boiler and engine, constructed a pond and air shaft,

and mined and delivered to defendant 542.8 tons of coal, making a total of labor performed, materials furnished, and coal delivered of $1,323.62. Alleges further that defendant furnished plaintiff and his employes, in goods and money, the sum of $663.66, leaving balance due plaintiff of $659.96. Plaintiff also claims the sum of $100 for time lost on account of defendant's failure to furnish the engine agreed upon, and asks judgment in the sum of $759.96. On the 22d day of June, 1903, defendant filed his answer, and specifically denies each and every allegation in plaintiff's complaint; says that plaintiff should not recover, because the terms of the contract are too vague and uncertain, and do not, in law, constitute a contract, and because no consideration is alleged therefor; because the alleged contract is not in writing; and that the contract mentioned is a contract concerning lands and real estate, and an interest therein, and is in violation of the statute of frauds, because not in writing; alleges that plaintiff is indebted to him in the sum of $175.15 upon open account for goods furnished to plaintiff, and prays judgment for said sum. On the 2d day of July, 1903, this cause came on for trial before a jury, and on July 3d the jury returned into court the following verdict: "We, the jury duly impanelled and sworn do find from the law and the evidence the issues in favor of the plaintiff in the sum of $216." On the 6th day of July defendant filed his motion for new trial, which was by the court overruled, and judgment entered on the verdict, to which defendant excepted, and prayed an appeal to this court.

*Stuart & Gordon*, for appellant.

*Wallace Wilkinson*, for appellee.

Townsend, J. Appellant has filed assignment of errors as follows: "(1) In overruling defendant's motion for a new trial. (2) In refusing to instruct the jury to find a verdict in

favor of the defendant in the sum of $175.15, as requested by the defendant. (3) In holding that there was sufficient evidence to sustain the verdict of the jury. (4) In refusing to give to the jury the instruction requested by the defendant, which is as follows: 'If you believe from the evidence that the contract in evidence in this case was entered into between the defendant, on the one side, and the plaintiff, Nowlin, and Ab Freese, jointly and as partners, on the other side, then you cannot find your verdict in favor of the plaintiff.' (5) In refusing to give to the jury the instruction requested by the defendant, which is as follows, to wit: 'If you believe from the evidence that the contract testified to in this case was entered into between the defendant, as one party, and the plaintiff, Nowlin, and Ab Freese, jointly, as the other party, the plaintiff will not be entitled to recover in this case the value of any work done by him under such contract.' (6) In refusing to give to the jury the instruction requested by the defendant, which is as follows, to wit: 'If you believe from the evidence in this case that the contract between plaintiff and the defendant provided that the plaintiff was to sink a slope until the same was in such condition that coal could be mined therefrom and placed upon the cars at a less expense than ninety cents per ton, and was thereafter to operate said mine for a term of not less than one year, then your verdict in this case must be for the sum of $175.15.' (7) In refusing to instruct the jury as requested by the defendant as follows, to wit: 'Before the plaintiff can recover in this case, he must prove to you by preponderance of the evidence that the defendant entered into a contract to furnish supplies for plaintiff's men until such time as plaintiff had reached coal in the mine which he could mine at a profit.' "

Appellant says, "In view of the fact that several of the instructions requested by the defendant and refused by the court embody the same principle under different expressions, they will not all be discussed under separate heads." Appellant

discusses his assignment of errors under four heads, contending, first, that "plaintiff sues in this case for the breach of the contract which he alleges he made individually with the defendant. The testimony of the plaintiff himself shows beyond question that no individual contract was made between plaintiff and defendant, but that, if any contract was made, it was made between the defendant, on the one side, and the plaintiff, together with Ab Freese, on the other; it being made by the plaintiff and Ab Freese as partners." Both appellee and Freese testify that appellee bought Freese out, and that Freese quit the work not long after the commencement of the same, and the record shows that appellant renewed the contract with appellee, as shown by the testimony of appellant, as follows: "* * * Then Nowlin came to me and said: 'Freese has quit me, and what is the show for me to continue the work. I have gone in and done some work, and I can handle that just as well as Freese could.' And I told him that was all right—I would look for him to give me some coal; and he said, 'Well, will you agree to furnish me just the same as you did Freese;' and I said, 'Certainly. All I can give you is the cars, and you have an engine and boiler there, and that is all I will give you.' * * *"

In Enc. of Pl. & Pr. vol. 15, pp. 882, 883, it is said:

"Under statutes requiring actions to be prosecuted by the real parties in interest, and authorizing assignees to sue in their own names, where a partner retires, and the firm claims are assigned to the remaining partners or to a new firm, the remaining partners or the new firm may sue thereon without joining the former member; and, irrespective of whether or not choses in action are assignable, if the retiring partner transfers the claim to the remaining partners or a new firm, and the debtor agrees to accept them as his creditors in place of the old firm, they may sue without joining the retired partner."

And on pages 715 and 716 the same rule is stated as applying to the federal courts:

"Under the code, however, the assignee of a cause of action arising ex contractu, which can properly be assigned, is the real party in interest, and, as such, may maintain the action in his own name.

"(bb)   In Federal Courts.   By virtue of the practice conformity act, an assignee of a cause of action arising ex contractu may, as the real party in interest, sue in his own name in the federal courts sitting in code states, and that, too, according to some decisions, though the assignor retains an interest in the cause of action assigned.   But before the adoption of this act the rule was otherwise."

Citing Arkansas Valley Smelting Co. vs Belden Min. Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246; Delaware County vs Diebold Safe, etc., Co., 133 U. S. 475, 10 Sup. Ct. 399, 33 L. Ed. 674.

Section 4933, Mansf. Dig. (Ind. Ter. St. 1899, § 3138), says: "Every action must be prosecuted in the name of the real party in interest, except as provided in sections 3140, 3141, 3143." In Molen vs Orr, 44 Ark. 486, the court said: "In an action by one partner in his own name on a firm claim that had been assigned to him by the retired partner, that there was a variance between the proof and the allegations in the complaint, there is no question; but the materiality of the variance is not to be determined, as at common law, by the incoherence of the two statements on their face. It must be shown by the party alleging the variance that he has been misled to his prejudice. Mansf. Dig. § 5075 (Ind. Ter. St. 1899, § 3280); Burke vs Snell, 42 Ark. 57." Parsons on Partnership, page 358, says: "At

common law no assignment of a debt due a partnership by one of the partners will authorize a suit in the name of the assignee. If, however, the assent of the debtor sufficiently appear, the action by the assignee in his own name is upon a new contract substituted for the old, and will be upheld."

The appellant's second contention is stated as follows: "At the time the plaintiff and his partner, Ab Freese, went to work upon the coal mine in question, it was understood that they should do those things necessary to the taking out of the coal and loading same upon the cars. No payment was to be made by the defendant for the work so done, but the preparations for taking out the coal were to be at the expense of these two parties, and such materials, if any, as were to be furnished by the defendant, were furnished; and it was at no time agreed between the parties that in the event of the termination of this contract, if a contract it was, could the defendant be held to pay for such preparations." It is clear from the testimony that the work was done upon a lease of appellant, and that appellee expected to get his pay for said work from the mining of the cheap coal that he would get from the rooms in said mine after the dead work had been completed, and the breach of the contract by appellant prevented appellee from getting his pay out of said work; and it will be further found that appellant took possession of said mine, and used the timbers in the tipple, and got the benefit of the work done in constructing the slope and air courses in said mine. And it further appears from his testimony that appellant received the benefit of that work: "Q. You are putting up a large tipple there now, are you? A. Where? Q. At the same place? A. Yes; going to. That is the intention. Q. You are fixing to dump coal off on the Katy track? A. That is my affair, sir. Q. And it is mine, too. You are using that same slope? A. We are not, sir, but we are going to use it. We are going to put a slope in"—which appellee

testified, was 25 yards of slope and an air course. It hence appears that appellee lost his work, as well as the prospect of making some money out of the coal, when he had prepared the mine to get it, by reason of appellant's refusal to furnish supplies as he had been doing, which appellee claims was a breach of the contract.

Appellant, for his third contention, says: "The allegation of the plaintiff, after having been changed to suit the emergency of the case, is that the plaintiff was to be permitted to continue the operation of the mine after the operation of the same had become profitable." And insists, first, that, in the absence of a definite term, "it would seem that plaintiff was to 'hold the place at the will of both parties," and, if that was true, "defendant could at any time oust the plaintiff, without being held for damages"; and, second, that "unless, therefore, the plaintiff has alleged in his complaint and shown by his proof that by the action of the defendant he has been prevented from making a profit out of the operation of this mine, he has no standing in this court." Appellee insists that "* * * that contention is in keeping with the acts of appellant, for we find that he owned the coal lease, and desired it developed, and entered into a contract with appellee to do all the work necessary to the profitable development of the coal, and promised that appellee, after doing said work, should hold the property, and receive his pay for said work out of the coal that could be taken out of the mine at a profit after the expensive work had been done; but when appellee had done almost all of the expensive work, and was almost ready to begin to take coal from the rooms to be constructed in said mine, which would have been the cheap coal, appellant at that time saw fit to disregard his agreement and break his contract." Freese, having previously sold out to appellee, had no interest in this suit, and the failure to make him a party plaintiff could in no way prejudice the rights of appellant.

Appellant's fourth contention is that "the contract alleged by plaintiff was void because contrary to the statute of frauds." It does not appear from the testimony of any of the parties that any specified time was fixed by the agreement of the parties for the contract to run, and, the appellee having gone into possession under the agreement, as he claims, that all supplies were to be furnished by appellant "until we got down to' cheap coal," he further claims that at the end of four months the contract was broken, and that the greater part of the dead work had been done. The question then presents itself, might not this contract have been completed within one year? And, if so, is it within the statute of frauds? In Arkansas Midland Ry. Co. vs Whitley et al. (Ark.) 15 S. W. 466, 11 L. R. A. 621, the court says: "In determining when contracts come within the one-year statute of frauds, courts have been governed by the words 'not to be performed.' They have treated them as negative words. In construing them, it is said: 'It is not sufficient to bring a case within the statute that the parties did not contemplate the performance within a year, but there must be a negation of the right to perform it within the year.' According to this rule of construction, it is well settled that the statute only includes those contracts or agreements which, according to a fair and reasonable interpretation of their terms, in the light of all the circumstances which enter into their construction, do not admit of the performance, in accordance with their language and intention, within a year from the time they were made, and that it includes no agreement, if, consistently with its terms, it may be performed within that time. Accordingly it is also well settled that agreements which contain no stipulation as to time, but depend for performance, either expressly or by reasonable implication, upon the happening of a certain contingency which may occur within the year, do not come within the statute—as, for instance, promises to pay money on the day of the promisor's

(22)

marriage, or on the death of a third party, or during the promisee's life, to work for another during his life, to board the promisee during his life, to educate a child, are not within the statute; 'and so, of course, whatever else be the contingency, provided it may happen within a year.' Roberts vs Rockbottom Co., 7 Metc. (Mass.) 46; Lyon vs King, 11 Metc. (Mass.) 411, 45 Am. Dec. 219; Foster vs McO'Blenis, 18 Mo. 88; Lapham vs Whipple, 8 Metc. (Mass.) 59, 41 Am. Dec. 487; Artcher vs Zeh, 5 Hill, .200; Lawrence vs Cooke, 56 Me. 187, 96 Am. Dec. 443; Peters vs Westborough, 19 Pick. 364, 31 Am. Dec. 142; Ellicott vs Peterson's Ex'rs, 4 Md. 487; Blair Town Lot Co. vs Walker, 39 Iowa, 406; Plimpton vs Curtiss, 15 Wend. 336; Russell vs Slade, 12 Conn. 460; Rogers vs Brightman, 10 Wis. 65; Jilson vs Gilbert, 26 Wis. 637, 7 Am. Rep. 100; Meyer vs Roberts, 46 Ark. 84, 55 Am. Rep. 567; Browne, St. Frauds (4th Ed.) §§ 273–283, and cases cited; 1 Smith, Lead. Cas. pt. 1 (8th Ed.) top pages 619–623, and cases cited"—and, to sustain the foregoing, also cites the following cases: Sweet vs Desha Lumber Co., 56 Ark. 629, 20 S. W. 514; Dailey vs Cain (Ky.) 13 S. W. 422; Jones vs Langdon (Ky.) 3 S. W. 129; St. Louis, A. & T. Ry. Co. vs Graham (Ark.) 18 S. W. 56; Taylor vs Deseve (Tex. Sup.) 16 S. W. 1008.

Under the proof in this case and the authorities cited, we have arrived at the conclusion that this contract is not within the statute of frauds, and that appellee can recover. The jury having found for appellee, and there being evidence to support the verdict, this court will not disturb the same, and therefore the judgment of the court below is affirmed.

RAYMOND, C. J., and GILL, J., concur.