(Decided 9th December, 1887.)

---

CHARLES J. BAKER, and others, trading as BAKER BROS. & Co. *vs.* CATHERINE LAUTERBACH, administratrix of JOHN LAUTERBACH, deceased.

*Contract of Apprenticeship by a Mother—Art. 6, sec. 20, of the Code—Statute of Frauds.*

A father may bind out his son as an apprentice until he reaches the age of twenty-one years, provided he pursues the mode authorized by section 20 of Article 6, of the Code; but a contract of apprenticeship executed by the mother is void.

Where a boy about twenty years of age entered the service of the appellants under a written contract signed by his mother who was a widow, binding him as an apprentice for five years to learn the art and trade of glass-blowing, and stipulating as to the rate of

Baker Bros. & Co. *vs.* Lauterbach, Adm'x.

wages he should receive, and that $200 should be held by the employers out of his wages as security, to be paid at the expiration of the term of five years, or forfeited if he should leave their employment for any cause during the term, such contract of apprenticeship was void; but upon the death of the employé after the expiration of more than three years of service, his administratrix is entitled to recover from his employers the full value of his services less such sums as had been paid.

If services be rendered by one party in pursuance of a contract, void under the Statute of Frauds, because not in writing, and be accepted by the other party, compensation for such services can be recovered; but the contract cannot be enforced in any way, directly or indirectly, whether by action, or in defence.

APPEAL from the Circuit Court for Howard County.

This suit was instituted in the Baltimore City Court, and on suggestion was removed to the Circuit Court for Howard County. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, IRVING, and BRYAN, J.

*W. A. Hammond,* and *E. Calvin Williams,* for the appellants.

Assuming that the written contract was not binding upon the deceased during his minority, still there was ample evidence to show that he ratified it after reaching his majority. Knowing all its terms and provisions, he continued to work under it for more than two years, receiving his wages, allowing portions of the $200 to be retained, and having his earnings ascertained and entered in his pass-book, in strict accordance with its stipulations. The tendency of the Courts is rather to sustain than to vacate the acts of infants, unless obviously to their prejudice. *Kemp vs. Cook,* 18 *Md.,* 138; *Brawner vs. Franklin,* 4 *Gill,* 360; *Monumental Bld. Asso. vs. Hermen,* 33 *Md.,* 132; *Poe on Pleading, sec.* 374.

When an infant can avoid a contract he must do it within a reasonable time after coming of age. *Dublin, &c. R. R. vs. Black*, 8 *Exch.*, 181.

But it is objected, that even assuming that the deceased had ratified the written contract, or could be presumed to have entered into a verbal one of similar import, still being for more than a year, it was within the Statute of Frauds and void. The statute, however, does not make such a contract void—it only prevents a recovery upon it. It can always be used as a matter of defence. *Crane vs. Gough*, 4 *Md.*, 333 ; *Clark vs. Terry*, 25 *Conn.*, 395.

Nor will the plaintiff, after having had full benefit of the contract, be allowed to repudiate it, and recover under the common counts. *Wilhelm vs. Hardman*, 13 *Md.*, 140 ; *Adams vs. Beall*, 67 *Md.*, 53.

If the thing promised be possible in itself, performance must be averred and shown, otherwise there can be no recovery either on the contract or on a *quantum meruit. Kribs vs. Jones*, 44 *Md.*, 406 ; *Penn. R. R. Co. vs. Reichert*, 58 *Md.*, 274 ; *Denmead vs. Coburn*, 15 *Md.*, 29 ; *Watkins vs. Hodges*, 6 *Harr. & J.*, 45 ; *McMillan vs. Vanderlip*, 12 *Johns.*, 165.

Nor does death change the rights of the parties, except to excuse the non-performance of personal services, for the future. It introduces no new element into the contract, and does not enable the representatives of the deceased to occupy any better position, or to recover more than he could have recovered. *Cutter vs. Powell*, 6 *Term R.*, 320 ; 2 *Smith's L. C.*, 1, quoted in *Smith's Mast. & Serv.*, 227; *Givhan vs. Dailey*, 4 *Ala.*, 336, and other cases quoted in 2 *Smith L. C.*, 43 ; *Olmstead vs. Beale*, 19 *Pick.*, 529 ; *Bishop on Cont.*, sec. 586.

*Reuben D. Johnson*, and *William Reynolds*, for the appellee.

The alleged written contract attempted to be set up by the appellants is invalid.    Art. 6, sec. 20, of the Code. *Smith's Master and Servant,* 71.

The alleged contract not being signed by the appellants or by any other person on their behalf, could not be enforced against them, and therefore all the promises made therein on behalf of the intestate were *nuda pacta,* being entirely without consideration.    *Wood on Statute of Frauds,* 490 ; *Dorsey vs. Packwood,* 12 *How.,* 137 ; *Copper Miners' Co. vs. Fox,* 16 *Adol. & Ell.,* 229, 236 ; *King vs. Welcome,* 15 *Gray,* 41 ; *Comes vs. Lamson,* 16 *Conn.,* 246.

Irrespective of the Statute of Frauds, the alleged written contract was void *for want of mutuality,* for while it purports to bind the intestate to serve for five years, under penalty of a forfeiture of $200, there is no corresponding obligation on the part of the appellants *to keep him in their employ* any longer than they might choose.    *Sykes vs. Dixon,* 9 *Adol. & Ell.,* 693 ; *Reg. vs. Lord,* 12 *Adol. & Ell., N. S.,* 757 ; *Lees vs. Whitcomb,* 5 *Bing.,* 34—*the alleged contract never having been signed by them.    Balto. & O. R. Co. vs. Potomac Coal Co.,* 51 *Md.,* 343 ; *King vs. Warfield,* 67 *Md.,* 246 ; *Bates vs. Cort,* 2 *Barn. & C.,* 474 ; 1 *Chitty on Contracts,* (11*th Am. Ed.,*) 21, and cases there cited ; *Smith on Contracts,* 126.

Assuming that the alleged written contract was a valid and binding one in every respect, then by its terms the appellants were by their own admission indebted to the intestate in the sum of $200, for the fact of his death while in their employ, did not subject him to the penalty named in the contract, as according to the well-settled rules of construction, a " leaving for any cause whatsoever," can only be taken to mean a *voluntary* leaving on his part ; and as this view of the case would entitle him to $200 under the contract upon the appellants' own admission, they cannot claim that they were injured by an instruction under which he only recovered $160.    *Smith's Master and Ser-*

*vant*, 197, 198; *Fenton vs. Clark*, 11 *Vt.*, 557; *Seaver vs. Morse*, 20 *Vt.*, 620; *Fuller vs. Brown*, 11 *Met.*, 440; *Fahey vs. North*, 19 *Barb.*, 341; *Dickey vs. Linscott*, 20 *Maine*, 453; *Hubbard vs. Belden*, 27 *Vt.*, 645, 666; *Ryan vs. Dayton*, 25 *Conn.*, 188; *Lakeman vs. Pollard*, 43 *Maine*, 463; *Wolf vs. Howes*, 24 *Barb.*, 174; 2 *Parson on Contracts*, (5th *Ed.*,) 38; 2 *Chitty on Contracts*, (11th *Am. Ed.*,) 849.

BRYAN, J., delivered the opinion of the Court.

John Lauterbach entered the service of Baker Brothers & Co. on the first day of March, 1880, and remained in their employment until August, 1883, when he was killed by an accident. He was twenty years of age on the twenty-ninth of March, 1880. His father died some years previously to his entering this service. But it appears that his mother signed a written contract with Baker Brothers & Co., by which she undertook to bind him to them as an apprentice for five years to learn the art and trade of glass-blowing. The contract stipulated that if the boy was considered competent to learn and be instructed, he was to receive for his services one-half of the rate of wages paid journeymen for similar work for the first four years, and two-thirds of such wages for the fifth year, and it was further stipulated that two hundred dollars should be held by the employers out of his wages, as security, to be paid at the expiration of the term of the apprenticeship; or forfeited if he should leave their employment for any cause whatsoever, before the expiration of the term of five years. All the wages were paid with the exception of two hundred dollars, and the present suit was brought by the administratrix of the deceased apprentice against Baker Brothers & Co. to recover this amount. The verdict was for one hundred and sixty dollars.

The contract was not signed by the employers, but only by the mother of the boy. In the view which we have

Baker Bros. & Co. *vs.* Lauterbach, Adm'x.

taken of the case, this circumstance is immaterial. A father may bind out his son as an apprentice until he reaches the age of twenty-one years, provided he pursues the mode authorized by the twentieth section of Article six of the Code; but a contract of apprenticeship executed by the mother is simply void. The boy would not be obliged to serve according to the terms of such an instrument; nor would the employer, by force of it, acquire any control over him. He did, however, serve for three years and five months with a full knowledge of the terms of this contract. He knew therefore the rate of compensation which his employers expected to pay for his work; it would not then be just that he should receive more. The law would imply a contract on the part of his employers to pay him what his services were reasonably worth. It would not, however, imply a contract on the part of the boy to serve for five years, nor to pay a forfeiture in case he should leave the service before the expiration of that time. A contract of this kind is required, by the fourth section of the Statute of Frauds, to be in writing. The terms of the Statute are, that no action shall be brought "upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." If, therefore, the boy had in express terms made a verbal contract to serve for five years it could not have been enforced against him by the other party. And if after serving a portion of the time he should refuse to carry out his contract, and bring suit to recover the value of the services rendered, the verbal contract would not avail the employer as a defence. It could not be set up as a contract at all; the breach of it would impose no liability which the law could enforce; the obligation to perform it could not be maintained in an

action at law. In *Browne on the Statute of Frauds*, the law is thus stated: "As a general proposition, however, we shall hereafter see that a verbal contract within the Statute cannot be enforced in any way, directly or indirectly, whether by action or in defence." Section 122. "The Supreme Court of Connecticut, in a case where the plaintiff by oral agreement bound himself to serve the defendant for a term longer than one year, for a consideration to be paid at the end of that time, and having repudiated the contract and quitted his employer at the end of six months, brought his action to recover the value of the services so rendered, held that he could recover, and that the defendant could not set up the existing verbal agreement to defeat his claim." Sec. 122a. "The clear rule of law is, that such a contract cannot be made the ground of defence, any more than of a demand; the obligation of the plaintiff to perform it is no more available to the defendant in the former case, than the obligation of the defendant to perform it would be to the plaintiff in the latter case." Sec. 131. It appears to us therefore upon the uncontested facts in the case that the plaintiff is entitled to recover the full value of the boy's services, less such sums as have been paid. It seems to be unnecessary to notice in detail the rulings of the Court below. It is sufficient to say that they accord with the views which we have expressed.

It must be observed that although contracts within the Statute of Frauds are void unless they are in writing, yet the voluntary performance of them is in no respect unlawful. If services be rendered in pursuance of a contract of this kind by one party, and be accepted by the other, they must be compensated. *Ellicott vs. Peterson's Executors*, 4 *Md.*, 491. And if an action be brought against a defendant for acts done, which were in performance of such a contract, or authorized by its terms, no recovery can be had against him. *Crane vs. Gough*, 4 *Md.*, 333; *Browne on Statute of Frauds*, sec. 133. It is said that the contract

operates as a license to do these acts, although it cannot be set up as conferring any right of action. As said by Lord ABINGER in *Carrington vs. Roots,* 2 *Meeson & Welsby,* 248, in speaking of a case within the Statute: "I think the contract cannot be available as a contract at all, unless an action can be brought upon it. What is done under the contract may admit of *apology* or *excuse, diverso intuitu,* if I may so speak; as where under a contract by parol, the party is put in possession, that possession may be set up as an excuse for a trespass alleged to have been committed by him." * * * "The agreement might have been available in answer to a trespass by setting up a license; not setting up the contract itself as a contract, but only showing matter of excuse for the trespass."

*Judgment affirmed.*

(Decided 13th December, 1887.)