# THE BETHLEHEM STEEL COMPANY

*vs.*

## LEE DORNBERG.

*Contracts—Express and Implied—Brokers' Commissions.*

A plaintiff cannot recover in the same suit upon an implied and an express contract, and an express contract being alleged in addition to an implied contract, the only consideration is whether the proof tends to establish it, and whether there is such a variance between the contract alleged and the proof as to require an instructed verdict for the defendant.          p. 123

To entitle a broker to commissions, it is not required that the actual contract shall be made, or the purchase consummated, by him. If he fully discharges his duties and performs all that he undertook to do, he is entitled to compensation, irrespective of whether his services were beneficial, or of value to his employer.          p. 125.

Where a real estate broker undertook for his employer to confer with various persons and to do other preliminary work in connection with the purchase of certain land, but the owner of the land refused to name a sale price to him, and he obtained a price only from one having a mortgage on the land, *held* that the broker did not perform what he undertook to do, and was consequently not entitled to commissions.          p. 126.

*Decided November 13th, 1919.*

Appeal from the Court of Common Pleas of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Alexander Preston,* with whom was *R. Contee Rose* on the brief, for the appellant.

*Israel B. Brodie,* with whom was *Harry B. Wolf* on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This suit was instituted to recover commissions alleged to be due the plaintiff for service rendered by him as a real estate broker, in connection with the acquisition by the Bethlehem Steel Company of a tract of land on Patapsco Neck from William L. Gray, and which resulted in a verdict in favor of the plaintiff for the sum of $4,500, or 5% on $90,000, the amount paid by the Steel Company for the property of Mr. Gray.

The record contains but a single bill of exception, and has reference only to the action of the Court in its ruling upon the prayers of the defendant. The questions presented are still further narrowed to the first three prayers of the defendant, all of which were rejected. These involve but two questions of law: First, whether there was evidence in the case legally sufficient to require the submission of the matter in controversy to a jury under the proof offered and the averments of the declaration; and, second, whether there was such a variance between the declaration and the proof offered by the plaintiff as to require the withdrawal of the case from the consideration of the jury.

The first three counts of the declaration were common counts in assumpsit; the fourth count reads as follows:

"4. And for that the defendant, The Bethlehem Steel Company, is a body corporate, and the defendant, The Penn-Mary Steel Company, is a body corporate; that the defendants and each of them employed the plaintiff to visit various places to confer with various persons and to do other preliminary work in connection with the purchase by the defendants or any of them of a tract of land known as the Gray property on the North Point road, in Baltimore County, the

defendants and each of them agreeing to pay the plaintiff, as compensation, five per cent. of the purchase price of the said tract; that the plaintiff undertook to render said services and did render such services and expended various sums of money in connection with the performance by him of his part of the contract, and has performed his part of the contract; that notwithstanding the fact that the defendants and each of them purchased or caused or procured the purchase of said property, the defendants and each of them have failed and refused to pay the plaintiff the agreed compensation of five per cent. of the purchase price thereof, although the plaintiff has demanded the same."

The suit as instituted was against three defendants, the Bethlehem Steel Company, the Penn-Mary Steel Company and Frederick W. Wood. By the instruction of the Court granted at the conclusion of the plaintiff's evidence, the jury was directed to render a verdict for the defendants, the Penn-Mary Steel Company and Frederick W. Wood, leaving the suit thereafter only as between Mr. Dornberg, as plaintiff, and the Bethlehem Steel Company, as defendant.

The first three counts in the declaration were the common counts in assumpsit, on an implied contract; while the fourth count sets out a specific contract, and it needs no citation of authorities for the proposition that a plaintiff cannot recover in the same suit upon both an implied and express contract. An express contract being thus alleged, the only consideration is whether the proof tends to establish the same, and second, whether there is such a variance between the contract alleged and the proof given as to require an instructed verdict for the defendant.

The contract of the parties as alleged in the fourth count is of a very vague character, the allegations being that the plaintiff was to "visit various places, to confer with various persons, and do other preliminary work in connection with the purchase" of the Gray property.

There is nowhere alleged in terms that the plaintiff as a broker was to make the purchase, and the plaintiff says of the interview with Mr. Wood, at the time when the supposed agreement was made, that "the first conversation was a general talk"; but he further, in answer to questions, speaks of obtaining the amount of acreage of certain tracts, of which the Gray tract was one, and the price or prices at which they could be obtained. He nowhere in his evidence particularizes any other service which he was to render in connection with acquiring the property for the Bethlehem Steel Company, but in his testimony he does claim to have rendered other services, which found their culmination in the transfer of the Gray property to the Steel Company, and apparently conceives that he was the procuring cause of such sale. From some source or other, not clearly disclosed, he obtained the amount of acreage in each of four pieces of property, which had been under consideration, that of the Gray tract being 180 acres. These he communicated to Mr. Wood, and he further testifies that he told Mr. Wood that the Gray property could be had for the sum of $500 per acre. The peculiarity of this testimony, however, lies in the fact that this price so reported was not obtained from Mr. Gray, and that in point of fact he found Mr. Gray extremely difficult to interview. He also testified to an interval of several months between the time when he received his instructions from Mr. Wood, and the time when he did succeed in seeing Mr. Gray.

It further appears from his testimony that he never at any time obtained from Mr. Gray the price at which he was willing to sell.

It is not entirely clear whether the price of $500 per acre was first placed on the property by the plaintiff, Dornberg, or by a certain Jacob Rice. Rice's relation to the transaction is somewhat peculiar. He held a mortgage upon the Gray farm for several thousand dollars, and on the 29th of June obtained from Mr. Gray and Mrs. Gray an option for five years upon the farm, for the sum of $75,000 though Mr.

Gray seems to have been kept in complete ignorance that he had given any such option. Rice poses throughout the entire transaction as being actuated solely by a feeling of personal friendship for Mr. Gray, and Rice and Dornberg were friends, Mr. Rice having given to Mr. Dornberg a verbal assurance that he should have a preference in the purchase of the property up to the sum of $500 per acre.

The deal was ultimately consummated through the instrumentality of Benson & Karr, as representing the Steel Company, and Mr. Rice advised his friend Dornberg of the time when the contract of sale was to be signed, and Dornberg acting on this information was present; but it was not until sometime later that he made his claim for $4,500 as broker's commissions in effecting the purchase. This is the case as made out by the plaintiff's own testimony.

The law governing the rights of real estate brokers to commissions on a purchase or sale is thoroughly well settled, both in this State and elsewhere. To entitle a broker to commissions it is not required that the actual contract shall be made, or the purchase consummated by him; it may be done by his principal, or one duly authorized to act for such principal just as well. What is required is that the broker shall fully discharge his duties and perform all that he undertook to do. If he does that, he is entitled to compensation, irrespective of whether his services were beneficial, or of value to his employer. *Parker* v. *Power,* 127 Md. 598; *Glenn & Co.* v. *Davidson,* 37 Md. 365; *Kimberly* v. *Henderson,* 29 Md. 512; *Schwartze* v. *Yearley,* 31 Md. 270.

The case, therefore, narrows down to this point: did Mr. Dornberg fully discharge his duties and perform all that he undertook to do? If so, he is entitled to his commissions; while on the other hand, if he did not, then he is not so entitled.

If reference is had to the declaration to ascertain what he undertook to do, we find that it was to visit various places, to confer with various persons, and do other preliminary

work in connection with the purchase of the tract of land known as the Gray property in Baltimore County.

Mr. Dornberg did visit certain lots on the North Point road, and he did confer with the owners of the Fitzell properties and the Custer property, and obtained from such owners their figure of a selling price; he did not succeed in getting into communication with Mr. Gray for some time, and when he did, Mr. Gray absolutely refused to name any price for his property to Mr. Dornberg. He did, however, have interviews with Mr. Jacob Rice, whose sole interest at the time appears to have been that of mortgagee; as it was not until some months later that Mr. Rice acquired his option, and there is no proof whatever on the part of the plaintiff tending to show that prior to obtaining the option Mr. Rice had any authority whatever to name a sale price for the Gray property. In this respect Mr. Dornberg did not perform all that he undertook to do, but on the contrary left the most important part of it unperformed.

In this condition of proof it was error to have rejected the defendant's first and second prayers, and the judgment must be reversed.

> *Judgment reversed without a new trial, the appellee to pay the costs.*