GRANT *v.* CURTIN, EXECUTRIX

[No. 103, October Term, 1951.]

*Decided February 15, 1952.*

· The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ. ·

*C. Maurice Weidemeyer* and *Linwood L. Clark,* with whom was *F. DeSales Mudd* on the brief, for the appellant.

*O. Bowie Duckett,* with whom were *Edward S. Digges* and *John G. Rouse, Jr.,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit at law by a plaintiff against the executrix of plaintiff's sister, for services rendered and for money advanced the decedent during her lifetime. The executrix and her son, unrelated to the decedent, were the sole beneficiaries under her will. A caveat was filed to the will by the appellant in the instant case, but after trial, the will was upheld and the rulings of the trial court were sustained on appeal here. *Grant v. Curtin,* 194 Md. 363, 71 A. 2d 304. The present case is an effort on the part of the caveatrix to establish the fact that she came to live with her sister as a result of a promise by the latter to leave her a house, that she did live with her sister and took care of her until the time of her death, and expended large sums of money for her care and maintenance, but the sister, instead of leaving her the house, which was her only estate at the time of her death, left it to others.

The declaration contains three common counts—for work done and materials provided, for money lent, and for money paid, and then contains two other counts based upon the specific contract. These counts are as follows:

"FOUR: And for that in October, 1941, the Defendant's decedent, just after her husband's death, proposed or promised to the Plaintiff that if she would give up her job in Philadelphia and come to live with her to nurse and care for her, and help her in running and keeping her home and otherwise assist her in her remaining years, that she would compensate her by leaving all her property to her at her death;

that she, the Plaintiff, believing and wholly relying on her said sister's promise, accepted the proposal or promise and returned to Philadelphia, Pennsylvania, where she had been employed for nine or ten years with a well-to-do banker, in his home, at a good salary of $75.00 per month, with private room, and board, and after due notice to her employer, resigned her position with him, moving all her belongings to the home of her sister, the Defendant's decedent, 204 King George Street, Annapolis, Maryland; that she there remained, nursing her more aged sister in her illness, feebleness, and declining years, and keeping or running her home in all respects, at her request, until her death, August 1, 1948, thus fully performing the agreement and obligations thus incurred on her part; that, immediately after her said sister's death, it was made known to her for the first time, that the aforesaid promise and representations by her said sister were false, and that her said sister had purposely deceived her, in that she secretly executed a will on November 5, 1943, in which she fraudulently devised and bequeathed all her property unto the said May H. Curtin and her son, Captain Neal Roland Curtin, and permitted said will to remain unrevoked, while at the same time her said sister continued until her death to accept from the Plaintiff full performance of said services as herein alleged; that Defendant's decedent, her sister, paid the Plaintiff absolutely nothing for any of said services and sacrifices made by her in complete reliance upon her sister's promise as aforesaid.

And the Plaintiff claims $4,980.00 damages.

FIVE: And for that the Defendant's decedent, Mary Grant Griffin, immediately prior to August 16, 1943, requested the Plaintiff to bring down from Philadelphia her savings bank de-

posits, to assist her in maintaining and keeping her home property, her said sister at the same time expressly repeating and reaffirming her proposal or promise that she was leaving all her property to the Plaintiff; that still relying upon the good faith of her sister's promise, she did bring down from Philadelphia her savings, amounting to $7,700.00, all of which, with $81.37 interest, or $7,781.37 in all, was spent from month to month in and on the home of Defendant's decedent, her sister, at her request, except a balance of $389.29 remaining August 2nd, 1948, after funeral expenses of $430.75 paid by Plaintiff, making the total amount spent from Plaintiff's account $7,392.08, of which not over $600.00 was spent on herself, making the net claim under this Count $6,792.08; that immediately after her said sister's death, it was made known to her, for the first time, that all the aforesaid representations, or promises, made to her by her said sister were false, in that her said sister breached her promise by clandestinely leaving a will dated November 5, 1943, in which she devised and bequeathed all her property unto the said May H. Curtin and her son, Captain Neale Roland Curtin, knowledge of which will was deliberately kept from the Plaintiff until after her said sister's death; that no part of said money paid for and on account of her said sister, as aforesaid, has been repaid, thus leaving the Plaintiff homeless and peniless.

And Plaintiff claims $6,792.08 damages, with interest. Total claim being $11,772.08, with interest."

At the conclusion of the testimony, the trial court directed a verdict of $430.70, representing the funeral bill, but took from the jury the consideration of all other questions. From the judgment on this verdict, the plaintiff appeals.

The questions before us relate to the sufficiency of the evidence to permit the jury to pass upon the common counts, and to give a verdict based upon a *quantum meruit.* The evidence relating to the alleged agreement by the decedent to leave the plaintiff her property shows that it was merely oral, and, therefore, it is within the prohibitions of the Statute of Frauds. *Semmes v. Worthington,* 38 Md. 298, 299. *Mundorff v. Kilbourn,* 4 Md. 459. The plaintiff cannot, therefore, recover under the special counts, although the evidence with respect to these counts is admissible to show the contract, as evidence of a mutual expectation to give and receive respectively, compensation, to overcome the presumption that services to one member of a family by another are gratuitous.

The general rule is that if a contract has been fully performed by the plaintiff (which is the claim here), then a recovery may be had on the common counts, if recovery is barred on the special contract. Thus, in *Ellicott v. Peterson,* 4 Md. 476, 491, the court said in a somewhat similar case: "Where there is a contract for the performance of services, or for the sale and delivery of goods which is within the statute, if the services be rendered or the goods delivered and be accepted, the party doing the work or delivering the goods may recover on a *quantum meruit,* and he may give in evidence the agreement under which the labor was performed or the goods delivered as a part of the *res gestae.* The law will not allow a man to accept a delivery of goods without making him liable to pay for them." And, in *Baker v. Lauterbach,* 68 Md. 64, 70, 11 A. 703, 704: "It must be observed that although contracts within the Statute of Frauds are void unless they are in writing, yet the voluntary performance of them is in no respect unlawful. If services be rendered in pursuance of a contract of this kind by one party, and be accepted by the other, they must be compensated." In *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709, a suit was brought by a nephew to recover a child's portion of

his uncle's estate, consisting of real and personal property, under an agreement by which the nephew was to perform certain services for the uncle during his lifetime, which services had been fully performed. There was no count in the declaration on a *quantum meruit,* and the court said that as the oral contract was within the fourth section of the Statute of Frauds, it could not be made the foundation of an action at law. Part performance would not take it out of the statute because the doctrine of part performance was peculiar to chancery, but the court further said: "Although the appellee is not entitled to maintain the present action upon the alleged contract, he can recover upon a *quantum meruit* the value of the services rendered by him to his uncle, for from services of this kind, even when rendered in pursuance of a contract within the statute by one party and accepted by the other, a right to compensation arises." Leave was given to remand the case to permit the pleadings to be amended so that the plaintiff could declare in assumpsit for the value of his services. This was done, but when the case reached this court for the second time, it was held that the action on the *quantum meruit* must be considered as begun when the amended declaration was filed, that this date was too late, and the claim was barred under the Statute of Limitations.

It is suggested that the first case of *Hamilton v. Thirston* has been overruled by later cases, notably by *Bright v. Ganas,* 171 Md. 493, 189 A. 427, 109 A. L. R. 467. We cannot agree that that or any other case has overruled *Hamilton v. Thirston.* In *Bright v. Ganas, supra,* this court had before it a case where a contract was made by a chauffeur to pay him $20,000 if he continued to serve his employer during his lifetime. The servant himself broke the contract by his conduct by making improper advances to his employer's wife. He sued both on the contract and on a *quantum meruit.* The court related what was done in *Hamilton v. Thirston, supra,* and then said: "If the plaintiff established by evidence facts sufficient to show a contract to bequeath him a specific sum in

consideration of his serving the decedent to the end of his days, unless sooner terminated by the act of either, then the plaintiff would be entitled to recover under the first count." The plaintiff, however, was not allowed to recover under a *quantum meruit* because he had shown an express contract which he had broken. *Bright v. Ganas* did not overrule *Hamilton v. Thirston,* but only applied an elementary rule of the law of contracts, to which there are so many exceptions in practice that the rule itself is in danger of being overlooked. "Where * * * the plaintiff has been guilty of fraud, or after performing a part has wilfully abandoned the work without legal excuse, and against the defendant's consent, leaving it unfinished, he can not recover in any form of action." *Poe on Pleading,* Sec. 101. This rule is not impaired, though it may be overlooked, because of the multitude of cases in which recovery on a *quantum meruit* has been permitted when the plaintiff has not wilfully defaulted but in good faith has fallen short of strict performance and the defendant has accepted, and received benefit from, the work.

*Breitinger v. Heisler,* 155 Md. 157, 141 A. 538, was somewhat similar to *Bright v. Ganas,* but not to *Hamilton v. Thirston.* In that case the court said: "In the instant case the appellee does not undertake to recover on the *quantum meruit* for the 'reasonable worth' of his services, but sets up a contract definite as to the amount of money involved, and undertakes to prove that contract without any variation, on the basis of $50 per month, regardless of the value of the services. If he stands on the contract, of course, it is well settled that he has no right to recover on the *quantum meruit.* There is either a contract at $50 a month or there is no contract at all upon which there can be a basis for recovery." The question was not one of performance or breach, but whether there was any contract at all. The language quoted was part of the court's reasoning in finding that the plaintiff had failed to prove his contract. The court simply did not believe his testi-

mony. Neither *Bright v. Ganas* nor *Breitinger v. Heisler* involved any question as to the Statute of Frauds. Neither in *Hamilton v. Thirston* nor in the instant case was any question of wilful breach of contract presented. In both, the contract, unenforceable because of the Statute of Frauds, is admitted in evidence only to rebut the presumption that the services were gratuitous and to show that plaintiff expected to recover, and the decedent to pay, compensation for them.

It is apparent that if the plaintiff in the instant case has produced evidence to prove a contract, which is not enforceable under the Statute of Frauds, she can nevertheless recover under the common counts on a *quantum meruit* if her part of the contract was fully performed. She faces, however, another obstacle in doing this which is that there is a presumption that where services are rendered by one member of a family to another, they are supposed to be gratuitous, although this presumption may be rebutted by clear and unequivocable evidence. *Krug v. Mills*, 159 Md. 670, 152 A. 493. With this in mind, we examine the testimony to see if it is sufficient to take the case to the jury.

Disinterested witnesses testified that the decedent had told them that she had asked Kate (the plaintiff) to come down to live with her and take care of her, because she was unable to do anything for herself, and that she had promised to leave Kate all of her property. Thus, a Mrs. Holden, who was a friend and lived near her, said: "Mary said she had no money to pay Kate with, but that when she died she would leave her the property. She said that that was what she told Kate." Mrs. Norman, a teacher at the Glen Burnie Senior High School, who lived near Mary and had known her for twenty years, said that at a time when Kate was standing there, the deceased said: "Kate and I have a perfect understanding; Kate knows that this is her home as long as she lives." Irene Jones, who did general housework for a living and worked for

the deceased, said the latter told her: "Kate is very good to me; I have no money to pay her, but I promised her the property when I die." Louis Senisi, who did odd jobs for the deceased, said she told him: "Mr. Senisi, I won't be here much longer; after I am gone I wish you take care of Kate's house like it been taken care of for me all these years." Mamie Dutton, who had worked for Mrs. Holden for about twenty or twenty-five years, said that after Mary's husband died, "She told us that she was going to have her sister to come down with her to take care of her, because she was feeling she needed her, she could not get along, because she was getting a little too old, she was going to leave her her property." That was before Kate came down, and she made the statement again after Kate came down, to Mrs. Holden and the witness, who were sitting in the kitchen talking. Harley T. Williams, who worked at the Naval Academy and had had a room in the house where the decedent and Kate lived, said that Mary told him she asked Kate to come down after her husband died, and she said she "did not have anything but the house that belonged to she and Kate." The evidence of Mrs. Holden, Mamie Dutton and Irene Jones supports the plaintiff's contention that a contract was entered into.

The facts about these sisters are that they were both born in Ireland. Mary, the deceased, was about fifteen years older than Kate and was about ninety years old when she died. Mary came to America when she was a young woman and worked as a domestic in and around Philadelphia and Annapolis. She subsequently married, and the house in which she lived in Annapolis came to her from her husband. He died in 1941. Kate came to America after Mary, and worked as a domestic in Philadelphia. She had worked for a number of years for two families in Philadelphia. She came to live with Mary about January 1, 1942, and lived with her until her death on August 1, 1948. Under these circumstances, we think there was sufficient evidence to go to the jury that the services rendered were not volu-

tary, such as a sister would ordinarily render to one in the family, but were the result of a definite agreement.

The trial court held there was no definite proof of the value of appellant's services. That may be true in part, but there was evidence that what Kate did was to look after the house, scrub the floors, fire the furnace, do the cooking, do the buying, and perform such services as a housekeeper and a cook would perform. There is testimony in the record that for part of such services, that is, those rendered by a three-quarter-time maid, with no Sunday work, a fair and reasonable wage would be $12.00 a week. We think that is sufficient testimony of value to take the case to the jury on this question.

On the counts involving the payment of money, the evidence shows that the plaintiff brought down from Philadelphia her savings, amounting to $7,781.37. There was paid out of this amount $6,792.08 during the period from August, 1943, to August, 1948. It is claimed that Kate was asked how much she spent for clothing and some eye sickness, and she said it amounted to about $600.00. It is contended that all the balance was spent in taking care of Mary, but there is no definite evidence as to how this was spent, or what was done with it. Mary had $3,497.77 in her account when her husband died. This was reduced to $1,726.10 by July, 1943, when Kate got her money from Philadelphia. For the next five years, Mary withdrew from her account $1,441.23, which figures about $20.18 a month. Kate, during the same five-year period, withdrew from her account $6,792.08, or $113.20 a month. There was also testimony that rooms were rented during this period, but how much this amounted to is not shown. Of course, whatever was spent during this period for food, heat, and other incidentals of running a house, was beneficial both to Mary and to Kate, and, without some definite figure, or some way of calculating more definite than that already shown, a jury could not, without speculation, determine how much of Kate's money was spent for Mary's benefit.

If it may be implied that the sisters were to share their joint expenses equally, there is no evidence (though there may be surmise or suspicion) that Kate paid more than her share. Kate's testimony that she spent about $200.00 for clothes and $400.00 for expense of eye trouble would not even be admissible under the evidence act, to show that all the rest was spent for joint expense or for Mary. *Bowman v. Little,* 101 Md. 273, 61 A. 223. It cannot be assumed or inferred, merely because more of Kate's money was spent than of Mary's, that more was spent for joint benefit and not more for Kate. That being the case, the evidence is not sufficient to justify a verdict for money lent or money paid, except as to the funeral expenses, about which there seems to be no contest.

Under these circumstances, we think the judgment should be reversed and the case remanded so that a new trial may be had.

*Judgment reversed with costs, and case remanded for a new trial.*

COLLINS, J., delivered the following dissenting opinion.

The bill of particulars specified the work done and material provided as: "* * * for 332 weeks, up to August 2nd, 1948, at $15.00 per week, in addition to room and board. The total claim for personal services being $4,980.00". The only testimony as to the value of Kate's services follows: "Do you know enough of what Kate was doing in the house for Mary to fix what you would think would be a fair and reasonable wage to have paid someone for the work that she was doing? A. Well, of course, wages were not as high then, and I am not absolutely certain what I paid, but I think it ran, this was a three-quarter time maid, about $12.00 a week, no Sunday work."

The case of *Krug v. Mills,* 159 Md. 670, 152 A. 493, was a suit in *assumpsit* under the common counts against an administratrix for services rendered the deceased

in his lifetime. Like the instant case, a verdict was instructed for the defendant. The plaintiff was a nephew and godson of the deceased. The uncle owned a house and parcel of ground. The plaintiff, when thirteen years of age, was living with his mother in Baltimore. The testimony favorable to the appellant was that the uncle said to the boy's mother: "* * * let me have the boy to work for me, and help me, and I am going to pay him, * * * That her brother said on various visits, that boy has been with me all these years working for me and helped to earn that money, and he is going to get it some day when I am gone, it will be there for him. That the last Monday that he came to my home prior to his death, we were in the kitchen talking, and he said to me, everything will be all right, and don't forget, when I am gone, that boy gets all that I have got, he worked for it and helped to earn it, and taken care of me when I was sick and helped me all the time, and when I am gone he is going to get it, that the boy always was with me as a companion, taking care of me, when I was sick, he worked for me and helped to earn that money and he is going to get it when I am gone. He said, I am going to have the boy with me to work for me, and what he earns I am going to save and put away for him." Disinterested witnesses testified that the deceased told them that he did not pay the nephew anything but when he died "what I have will go to that boy". This Court found in that case that "The nephew lived with the uncle, performed services which are usually and incidentally performed by a member of the family for other members of the same family, and undoubtedly was highly regarded by the uncle, which made it natural for the nephew to expect that he would be remembered by his uncle through a will, especially in view of the fact that the record discloses that the only child of the deceased lived apart from her father and never visited him or had any association with him for many years prior to his death." Judge W. Mitchell Digges went fully into the law in that case, which is remarkably

similar to the one before us here. He pointed out: "In order to justify a claim for services against a decedent, there must have been a design at the time of the rendition to charge, and an expectation on the part of the recipient to pay, for such services (*Elosser v. Fletcher*, 126 Md. 244; *Jones v. Jones*, 146 Md. 19), or, as expressed in the case of *Bantz v. Bantz*, 52 Md. 693: 'In order to justify a claim for services being allowed against a decedent, there must have been a design at the time of the rendition to charge and an expectation on the part of the recipient to pay for the services. The services must have been of such a character and rendered under such circumstances as to fairly imply an understanding of payment and a promise to pay. There must have been an express or implied understanding between the parties that a charge for the services was to be made, and to be met by payment.' In *Bixler v. Sellman*, 77 Md. 496, the court said: 'Of course, it must be conceded that generally the law implies a promise to pay for services rendered and accepted; but a well recognized distinction exists where the service is rendered by a member of the family of the person served. In the latter case a presumption of law arises that such services are gratuitous.' To like effect are *Wallace v. Schaub*, 81 Md. 598; *Gill v. Staylor*, 93 Md. 472; *Harper v. Davis*, 115 Md. 349; *Giering v. Sauer*, 120 Md. 295. It therefore appears that, if the party rendering the service is not a member of the family of the decedent, the law implies a promise on the part of the recipient to pay what such services are reasonably worth. On the other hand, if the party rendering the service is a member of the family of the recipient, the law presumes such service to be gratuitous; and, in order to recover, the plaintiff must show an express understanding at the time such service was rendered that he meant to charge for same, and that the recipient understood that he was claiming compensation; and, further, that the recipient intended to pay for same. In *Jones v. Jones, supra,* it was said: 'The test is, Were the services for which compensation is

being demanded rendered by one who is of the same family as the recipient; family, as here used, meaning a collective body of persons who form one household, under one head and one domestic government, and who have reciprocal natural or moral duties to support and care for each other.' In 2 *Page on Contracts,* 1183, sec. 778, the author, citing *Bixler v. Sellman, supra,* says: 'Persons who live together as members of the same family and render personal services each to the other generally do so from motives of affection and not because of the expectation of a financial reward therefor. Accordingly, the mere rendition of personal services between persons so situated does not establish a liability on the part of the person receiving such services to make compensation to the person rendering them, even though the services may be performed at the express request of the person receiving the benefit thereof, or may be voluntarily accepted by him.' * * * In *Provident Trust Co. v. Massey,* 146 Md. 34, we said: 'If the parties are members of the same family, the law presumes that at the time the services were rendered there was no intention to charge and pay for them, and requires clear and satisfactory proof from disinterested sources to overcome this presumption.' When through a series of years the claimant's conduct was irreconcilable with his claim, it may not be allowed without clear and satisfactory proof from credible sources." The Court concluded in that case: "We are not unmindful of the fact that, in considering the question under the prayers in this case, we are not passing upon the weight of the evidence, but upon whether there is any evidence legally sufficient to take the case to the jury. Having determined that the plaintiff and the deceased were members of the same family, the law presumes that any services rendered was gratuitous, and in order to rebut such presumption it is incumbent upon the plaintiff to show by clear, satisfactory, and unequivocal evidence that there was at the time the services were rendered an intention on his part to make a charge for his services, and a cor-

responding purpose on the part of the deceased to pay for same. This, in our judgment, the plaintiff has failed to do; and we find no error in the ruling of the lower court directing a verdict for the defendant."

There is no doubt in the instant case that these two sisters were members of the same family. The services here rendered were those usually performed by one member of a family for other members. There is not a *scintilla* of evidence that Mary expected to pay, or that Kate expected to receive any compensation for these services, other than the devise of Mary's property at her death. The appellant is not suing here on the contract to devise the property, evidently on account of Statute of Frauds. *Fitzpatrick v. Michael,* 177 Md. 248, 254, 9 A. 2d 639. *Mannix v. Baumgardner,* 184 Md. 600, 42 A. 2d 124. As stated in *Poe on Pleading and Practice,* Volume 1, Section 101, in speaking of the count for "work and labor done": "Wherever work has been done by the plaintiff for the defendant at his request, *without an express contract as to price,* the plaintiff, under this count, may recover the fair value of his work". (Italics supplied.) Whatever testimony was offered, if any, as to any intention of Mary to pay and Kate to receive, is based on *an expressed contract as to price,* which was to be the devise of her property, either for life or absolutely. Evidently appellant relies on this specific contract, for we were advised during the argument of this case that appellant has now filed a suit for specific performance of that contract.

Appellant relies strongly on the case of *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709 (1901). That case involved a suit at law on an alleged oral agreement by an uncle to devise a child's portion of his estate consisting of real and personal property, to his nephew, if the latter would render certain services to him during the remainder of his life. This was almost precisely the state of facts in the later case of *Krug v. Mills,* 159 Md. 670, 152 A. 493, *supra.* There was evidence tend-

ing to prove the oral agreement. There was no count in the declaration on a *quantum meruit* for the value of services rendered by the appellee. This Court there held that the Statute of Frauds was a bar to recovery on the oral agreement but said: "Although the appellee is not entitled to maintain the present action upon the alleged contract, he can recover upon a *quantum meruit* the value of the services rendered by him to his uncle, for from services of this kind, even when rendered in pursuance of a contract within the statute by one party and accepted by the other, a right to compensation arises. *Ellicott v. Peterson's Extrs.*, 4 Md. 491; *Baker v. Lauterbach*, 68 Md. 70; *Wallace v. Long*, 105 Ind. 526; *Emery v. Smith*, 46 N. H. 151." When the case was again tried, 94 Md. 253, 51 A. 42, under an amended declaration containing the common counts in assumpsit, as in the case of *Krug v. Mills, supra,* this Court held that the claim was barred by limitations and further said: "The plaintiff's amended bill of particulars, filed on the 16th of May, 1901, claims for services rendered and work and labor done by the plaintiff for the defendants' decedent from November 18th, 1888, to January 4th, 1898. It also appears that none of the witnesses examined by the plaintiff gave any evidence as to the value of the services performed by the plaintiff, nor any evidence that the services were worth $50.00 per month, as specified in the bill of particulars, or any other sum, nor were they asked by the plaintiff as to such value, and no evidence was given by any of the witnesses that the services of the plaintiff, to which they testified, were performed under the contract of 1888, nor any other contract, *but all testified that the services were rendered after the date of the contract.* No value of services was given, except as set forth in the contract, and that John B. Thirston died in January, 1898." (Italics supplied). In the instant case it is claimed that the contract was made when Kate came to live with Mary on January 1st, 1942. Any services rendered by Kate were of course after that date.

In another later case, *Bright v. Ganas,* 171 Md. 493, 189 A. 427, 109 A. L. R. 467 (1937), plaintiff sued defendant as executor on an alleged testamentary contract for the sum of $20,000.00 for services rendered by plaintiff to defendant's decedent. A judgment was rendered for $8,990.00 and defendant appealed. The first count of the declaration set up an oral agreement that if plaintiff as a servant continued to live with the decedent, Colonel Darden, during his lifetime, the plaintiff was to receive on the decedent's death "out of his estate" the sum of $20,000.00. The decedent died without providing for plaintiff in his will. The second count was "for work done and materials furnished" at decedent's request. The Court there pointed out that it was never considered faulty pleading to include the common counts, when there is a count on an express contract and that a careful pleader, when declaring on a special contract, seldom omits the common counts. It was there said: "In *Bethlehem Steel Co. v. Dornberg,* 135 Md. 121, 108 A. 474, 475, a suit by a broker for commissions on a sale of real estate, it is said: 'The first three counts in the declaration were the common counts in assumpsit, on an implied contract, while the fourth count sets out a specific contract; and it needs no citation of authorities for the proposition that a plaintiff cannot recover in the same suit upon both an implied and express contract.'" The Court there referred to *Hamilton v. Thirston,* 93 Md. 213, and said only: "In *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709, the plaintiff declared only on a specific oral agreement with an uncle for a devise in consideration of services. The statute of frauds was not pleaded, but defense was on that ground, was sustained in this court, and the judgment reversed with leave to the plaintiff to apply for a remand to so amend his pleadings as to declare in assumpsit for the value of his services." The Court further said in *Bright v. Ganas, supra*: "If the plaintiff established by evidence facts sufficient to show a contract to bequeath him a specific sum in consideration of his serving the decedent

to the end of his days, unless sooner terminated by the act of either, then the plaintiff would be entitled to recover under the first count [the contract count]. If the evidence shows no contract, but an understanding that the services were being rendered on the implied agreement that they be paid for at their reasonable value, the second count * * * is sufficient in form for this purpose. The same count would also be proper in form if it should be found that there was an express contract, the work done, and nothing left but the payment of the money." It was later said: "The suggestion that he was on a weekly wage was denied and repudiated by the plaintiff, *so that he stands or falls on his alleged contract.* All of which leads to the conclusion that there is nothing contained in the record which proves or tends to prove anything except a specific agreement for the payment of $20,000 out of Colonel James G. Darden's estate, at his death, to Paul Ganas, if he served the colonel faithfully and continuously to that time." (Italics supplied). Recovery was denied on the specific agreement because of Ganas' demeanor to the decedent's wife. In the instant case, the evidence, if any, is all directed toward the proof of a specific agreement that Mary would leave all her property to appellant at her death, either for life or absolutely. The claim here, as in *Bright v. Ganas, supra,* also "stands or falls" on the alleged contract. I think the ruling of the trial judge on the claim for work done and services rendered was therefore correct. See also *Neal v. Hamilton,* 159 Md. 447, 451, 150 A. 867; *Evans v. Buchanan,* 183 Md. 463, 38 A. 2d 81. I agree that recovery could not be had on the second count. I am therefore of opinion that the judgment should be affirmed.